R. M. DOLL *et al. v.* JOSEPH A. COOPER.

1. PLEADINGS AND PRACTICE. *Suit on attachment bond. Bankrupt. Assignee.* The bankrupt's right of action for wrongful suing out of an attachment, passes to the assignee in bankruptcy in so far as the action seeks compensation for injuring, detaining or converting the property attached, but it remains with the bankrupt in so far as the action seeks to recover compensation for injury to the bankrupt's business, reputation and credit, and vindictive damages for malicious suing out or abusive use of the attachment; but, though the bankrupt and assignee may maintain separate actions and recover, the assignee for the injury to the property, and the bankrupt for the personal tort, yet the aggregate recoveries cannot exceed the amount of the penalty where the action is on the attachment bond

2. SAME. *Same. Measure of damages.* The measure of damages for wrongful suing out of an attachment is, (1) loss by injuring, detaining or converting the property attached; (2) loss by injury to plaintiff's business, reputation and credit, as where plaintiff is thrown into bankruptcy by the attachment; (3) vindictive damages based on the falsity or *mala fides* of the claim, wanton abuse of process or express malice in suing out, levying or continuing the attachment; and these three elements of damage constitute the recovery in an action on the attachment bond as well as in the action at common law.

3. SAME. *Vindictive damages.* Vindictive damages cannot be recovered in an action for wrongful suing out of an attachment, where the declaration does not aver malice.

FROM KNOX.

Appeal in error from the Circuit Court of Knox county. S. A. RODGERS, J.

T. S. WEBB for Doll.

COLDWELL & SON for Cooper.

FREEMAN, J., delivered the opinion of the court.

This is an action brought against Cooper as principal, the other two defendants as sureties on an attachment bond, executed on filing an attachment bill in the chancery court at Knoxville. The condition of the bond is the usual one as prescribed by our statutes, the liability depending on failure to prosecute the suit with effect, and the obligation is, in that event, to pay all damages that defendant may sustain from wrongfully suing out said attachment.

The declaration is substantially a suit for $12,500 as damages for the breach of a bond, giving the date and description of the bond, setting out the condition fully, which is in case of failure to prosecute successfully, or the same should be dismissed, to pay all costs and damages that might be sustained by reason of wrongfully suing out the attachment.

The bond is averred to have been broken in this, that there was a failure to prosecute the suit or attachment, and the same was dismissed in March, 1877, by a decree of the court, having been issued in 1872. It is then averred that the said Cooper did illegally and wrongfully cause the said attachment to be issued out of said court, upon the execution of said bond, and "illegally and wrongfully caused said attachment to be levied upon the goods, wares and merchandise, books, notes and accounts, the property of the plaintiff, Curtis Cullen, and did wrongfully and illegally cause the possession of said goods, wares and merchandise, books, notes and accounts, so levied upon to be

37—VOL. 9.

illegally and · wrongfully withheld from the said Curtis
Cullen from the 9th of January, 1872, to the date of
bringing the suit, and the same he still illegally and
wrongfully causes to be withheld from him, thereby
*greatly damaging* him, the said Curtis Cullen, in his
property, credit and reputation and business, to-wit, the
sum of $12,500.''

Defendants filed a plea, which after setting out the
attachment bond, denies the ·right of recovery, because,
First, that the attachment was not illegally and wrong-
fully sued out, nor was the same illegally and wrong-
fully levied; nor were the goods, wares and merchandise,
books and accounts illegally and wrongfully withheld,
as the plaintiff hath alleged, but that said attachment
was lawfully issued, and the goods, wares and mer-
chandise were lawfully and rightfully levied on and
retained without malice and upon probable cause, and
tender an issue, to which there was a replication.
On motion of plaintiff, so much of the plea as averred
that the attachment was sued out and levied with-
out malice and probable cause, was stricken out and
the case went to the jury on the issues thus made.
On the trial, the jury, under the instruction of the
court, found a verdict for the defendants, from which
an appeal in error is presented to this court.

Only so much of the charge is brought before us
as raises the question in which the plaintiff claims
there was error. It is as follows: That in this ac-
tion plaintiff could only recover such damages as were
the natural, proximate and legal result of suing out
the attachment, and could not recover vindictive dam-

ages, or damages done to the business, credit, or reputation of plaintiff.

Second. That if Cullen was adjudged a bankrupt, after the attachment, and before his right of action against Cooper for wrongfully suing out the attachment, the "attachment (the action we take it), passed to his assignee in bankruptcy, and Cullen could maintain this suit."

We notice the last branch of the charge first, because if his Honor is correct in that it is conclusive of the case, and we need not consider the other question, except so far as may be necessary, in order to get at the true nature of the present action.

It is conceded that the firm of Doll & Cullen were adjudged bankrupts, within a short time after the levy of this attachment, and an assignment regularly made of all their property and rights, as required by the bankrupt law, regularly made.

The question for adjudication is, did the right of action stated in the declaration in this case go to the assignee, as held by his Honor, or did it remain in Cullen, and he entitled to maintain it, notwithstanding his bankruptcy?

Section 5046 of Revised Statutes of the United States, in reference to the bankrupt's estate, is as follows: "All property conveyed by the bankrupt in fraud of his creditors, all right in equity, choses in action, patent rights, all debts due him or any person for his use, and all liens and securities therefor, and all his rights of action for *property or estate*, real or personal, and for any cause of action which he had

against any person, arising *from contract*, or from the unlawful *taking* or *detention* or injury *to the property* of the bankrupts, and all his right of redeeming such property or estate, together with the like right, title, power and authority to sell, manage, dispose of, sue for, recover or defend the same, as the bankrupt might have had if no assignment had been made, shall vest in his assignee, subject to exemption in favor of exempt articles provided by law."

While the generality of this language would seem to include every right, of any kind, to which the bankrupt might be entitled, yet we think its true exposition is given by the Supreme Court of Wisconsin, in the case of *Noonan* v. *Orton*, vol. 34, p. 264. The court says: "Taking the whole language together, it refers to property and rights of recovery incident to and growing out of wrongs to property, where, though the action is in form of tort, yet the damages are to be measured by the *value* of the property taken, as in trover, or any action where such property is sought to be recovered, together with incidental damages for its detention, as for direct injury done to property, and the like. The true idea is, that when recovery is to result from the property and stand in its place, or be given as compensation for it, or injury to it, then all such rights were intended to pass to the assignee. But as said by the same court, page 365, "That there are some rights of action which do not pass to the assignee, may also be inferred from the provision of section 16, which authorizes the assignee to prosecute in his own name actions pending in the

Doll *v.* Cooper.

name of the bankrupt, for the recovery of a debt, or other thing, which might, or *ought* to *pass* to the assignee," clearly implying that there are rights of action which do not pass to such assignee. In this case it was held that an action for malicious prosecution, or for malicious abuse of legal process, was an action for a personal injury, although special damages were claimed in the declaration for loss to plaintiff's business resulting from the wrong in aggravation of the recovery sought.

The principle underlying this opinion is, that all right of action appertaining to or growing out of property, or injuries to such property, thus lessening its value as an asset in the hands of the assignee, pass to such assignee, but a right to sue for a pure tort to the person, or personal wrong, or to his personal relations, does not pass.

This is based in sound principle and sustained by the general policy of the bankrupt law, which is that all the property and rights of the debtor, which would be assets in the hands of his personal representative, if he were dead, shall pass to his assignee to be administered by him, and distributed *pro rata* among his creditors. It would hardly be contended, that a right to sue for slanderous words, or for *crim. con.* would pass to such an assignee. It has been held in England, under a similar statute, that a right of action for trespass *quare clausem fregit* did not pass to the assignee. The English statute is even more extensive than that of the United States, for it gives to the assignee all rights of action accruing up to the time

of his receiving his certificate of discharge. The court says in the case cited (*Rogers* v. *Spencer*, 13 Mer. & Wilby, 571), that the right of action did not pass, "as the object of the statute is manifestly to benefit creditors by making all the pecuniary means and property of the bankrupt available to their payment. In furtherance of this view, it has been construed liberally, so as to pass not only what in strictness may be called the property and debts of the bankrupt, but also the rights of action to which he was entitled for the purpose of recovering in specie, real or personal property, or *damages* in *respect* to that which has been unlawfully diminished in value, withheld or taken from him. But causes of action not falling within this description, arising out of a wrong personal to the bankrupt, and for which he would be entitled to remedy, whether his property were diminished or not, are clearly not within the letter, and have never been held to be within the spirit of these enactments, even in cases where injuries of this kind may have been accompanied or followed by loss of property, and to this class we think the action of *trespass quare fregit* must be considered to belong."

We understand the cases of *Comegys* v. *Vasse*, 1 Peters, 193, and *Erwin* v. *United States*, 7 Otto, 396, to accord with this view. The first was a case of an unlawful capture of property, and the right of recovery was clearly the value of the property, and this stood in the place of the property, and the amount measured by such value. The other was a right to recover compensation for the possession and use, or ap-

propriation of tangible property, and stands on the same principle. It was a claim against the government for cotton destroyed by the army during the war. Both rights were held to pass to the assignee, and we think correctly, the recovery but representing the property at the time of the wrongful taking.

The question for solution in this case, is this an action to recover property, or damages for an injury done to property, by which its value was lessened, or will the sum sought to be recovered, represent property of which the plaintiff had been deprived, or any value in such property? If not, then on the principle given, the right does not pass to the assignee. In other words, if property, or its value, is not the measure of recovery, or any damages done to such property, the right is in Cullen, if it is, then the right passed from him to the assignee. If the damages is to him, as an individual, affecting other rights and having other elements than property or its value, or damages done to it, then plaintiff should be entitled to the recovery he seeks.

We do not say, that an action for the recovery of the "goods, wares and merchandise, books, notes and accounts," mentioned in the declaration, might not lie, yet in the nature of the case in such a proceeding as the one by attachment in chancery under our practice, such a liability is the least likely to arise, if it ever does in practice, of any other provided for by the bond given. The property is not in the custody of the complainant in such a suit, but in the custody of the law. The sheriff holds it, subject to be replevied by defendant,

Doll *v.* Cooper.

before sale or return of the process into court, after return the clerk takes such a bond if tendered: Code, secs. 3510, 3511. It can only be damaged so as to give a cause of action to the defendant by the negligence or wrong of the sheriff while he holds it, and this would be a breach of official duty, for which he and his sureties would be liable on his official bond. At the termination of the suit, it would be ordered, if not replevied, to be restored to the possession of defendant, if decreed against complainant, or appropriated to the decree, if found liable, and so there is no need to resort to the bond by separate action, as this is in order to obtain the property.

In the light of our own decisions let us see what are the leading elements of the damages to be recovered in such a suit. In *Smith* v. *Story*, 4 Hum., 172–3, which was an action on the case, for wrongfully and oppressively suing out an attachment, the court, after saying, the statute gave no enumeration of the grounds of the action, but merely requires a bond to secure such damages as may be recovered, gives some of the elements of damages as follows: "For the grounds and principles upon which such damages shall or may be received, the jury are to look to the common law. Is there an abuse of the process of the court? Is the claim of the plaintiff false? Was there *mala fides?* Were fraud and oppression the object of the suit, or of resort to the process? Such are the facts, or some of them; such the motives which must be attached to the conduct of the plaintiff in the attachment suit." The principles of the common

law, therefore, on the subject of action for malicious suits must apply, modified by the nature of the case. The court, we add, had previously indicated the opinion, that all these elements of damage were included in and covered by the bond, and might be recovered in an action on such bond.

In *Smith* v. *Eakin*, 2 Sneed, 461, which was an action on the bond, it was so held, the court saying, "We hold, in such action there may be a recovery not only for such damages as are properly recoverable in the common law action, but likewise for other damages, upon grounds contemplated by the statute, and not embraced by the principles governing the action on the case. We are unable to perceive any sound reason for holding the bond to be merely a security for the damages to lie, recovered in an action on the case." The terms "wrongfully suing out the attachment" are as properly applicable to a case where the process has been resorted to, in the absence of sufficient legal cause, without reference to the intent as to the case where it has been sued out from motives of malice and oppression, and the consequences of the wrongful act may be no less injurious to the defendant in the attachment in the one case than in the other": *Id.* 462. The court then adds, "That the measure of damages would be confined to the actual injury sustained in the one, as in the other, that is when maliciously sued out, *vindictive* damages might be allowed. All such damages are the natural proximate result of the wrongful act, and secured and covered by the bond."

These cases settle the law to be, that all such

damages as might be recovered in an action on the case at common law, as well as *vindictive* damages, in case the wrongful suing out· the attachment, was also malicious, are recoverable in the action on the bond. In the first case, where no malice is averred, the actual injury sustained is to be looked to, in the other, punitive damages may be given, over and above this.

But when we look at some of the elements, or all of them, found in the communication given by the court (4 Hum., 172), it is clear, they are not for property, nor damages to property as such—but based on the conduct and motives of the complainant. Was there an abuse of process—the claim false—no probable cause to resort to· the process—*mala fides?* We · add, as the recovery is to be had on the same principle as in the common law action for malicious suits, modified by the nature of the case—the modification found in this, and the like case would be injury to a merchant—his reputation—credit—as a business man, and the wrong done by the wreck of his business, caused by his being thrown into bankruptcy on a claim shown to have been false and unfounded—with perhaps other elements, such as the costs of the wrongful suits, etc.

Now if these be the elements of damage, and the nature of the case ‚ before us, it follows, the action did not pass to the assignee, but remained to the plaintiff. The gravamen of damages averred in the declaration is, that by illegally and. wrongfully suing out the attachment, and wrongfully taking possession of his goods, books, notes and accounts, he was, to use the language

of the declaration, "greatly damaged in his property, estate, credit, reputation and business."

The suit is not for the property taken, nor for notes, books and accounts, as the character of the property is not stated, nor value, nor amount of notes and accounts, nor any description of the same, so as to be the basis of such recovery. These are but stated as inducement to show the means by which the injury to plaintiff in business, estate, credit and reputation was done.

So it was held by the Supreme Court of Wisconcin in *Noonan* v. *Orton*, 34th vol. 259, and that it was a suit for personal injury, although special damage or loss to plaintiff's business, resulting from such wrong was alleged in aggravation of damages.

Construing this declaration as not entitling the party to any recovery for the property, or damages for injury to its, nor for its detention from plaintiff, as we do, and confining plaintiff to a recovery for the wrongs done of the kind indicated, we have no question but that the action was for a personal wrong—a pure tort, and not for property, and therefore did not pass to the assignee. This record shows there is no cause of action for loss or injury done to the property, but the same has been regularly appropriated in the bankrupt proceeding to the payment of his debts, and thus he has had, in fact, the benefit of it.

An objection is suggested, that the bond giving a right of action for property or damage to such property, when the proper case was made, and such a right being one that passes to the assignee, that to

Doll *v.* Cooper.

allow the plaintiff to recover in such a case for the personal wrong, would be to split the cause of action, and there be two different rights of suit on the same bond.

Several answers may be given to this, First, we think the objection cuts both ways, and would, if pressed to its legitimate conclusion, as well defeat the assignee, as plantiff. Why not say, that if he sued on the bond for an injury to the property, or for the property itself, that this would be to split the right of action given by our law on the bond, and therefore deny him any remedy? In that view, the same objection being held tenable when the plaintiff sues on the bond for his personal wrongs, no recovery could be had by either party. But why should the fact that a party who has received no damage, in this case, the assignee, and has no cause of action, and has brought none, because he has the property, be made the means of defeating a right of action for an apparently gross wrong, because forsooth, if he had been injured, he might have sued. Why give him a right, that has not been affected, and thereby defeat a right of recovery in the other party who has been injured? We are unable to see the force of this objection, that seems to be purely technical, and which defeats a right on such a technicality.

Why not look at the real nature of the case, and hold, as the bond covers damages both personal, and to property, that the right to the first goes to the party injured, and the right to the other goes to the party who might have been, had he been deprived of

the property? The defendants cannot be made liable above the amount of their bond, and the fact, that by operation of law, and probably, if not certainly by wrongfully issuing the attachment, these rights have been severed, and exist in several individuals, ought not to defeat the one who has been injured, or rather solely injured.

The opposite technical view we think too narrow, and stands on grounds of logic, akin to that which was at an early day familiar, but which is now being susperceded by more liberal modern reasoning. It would be sustained by an old edict of Anglo Saxon law, we believe, which laid it down, " when a house was broken, and property stolen held by the house-holder, as bailee, that the real owner should look to the bailee alone for compensation, and the bailee sue the thief, because, as it says, we cannot raise two claims out of one *cause*": See Common Law, by Holmes, Note 1, page 166. The logic is neat and clear, but the justice and right of the case is effectually ignored, by the conclusion.

This bond is given to three or four other defendants, is a joint obligation to them with the plaintiff. They were not connected with him in business. Suppose each had chosen to sue on the bond, would it be said, this would be splitting the cause of action? The injuries could not have been joint to them, as they were different firms and parties, who had no connection with defendant. Could not each have sued on the bond for his individual wrong? We take it this could not be doubted.

Doll *v.* Cooper.

So in the case of an administration bond, each creditor injured by the wrong of the representative might sue, and the right of one would not interfere with that of another. This furnishes an analogous case, as we think, precisely in point, and the principle is one well known in our practice.

The parties gave their obligation while the bankrupt law was in force, and may be held to have contracted in view of the possible contingency which has happened, and therefore cannot complain, that by possibility they might have been subjected to two suits, in the event of the bankruptcy of the defendant to the chancery suit. For these reasons, we think there is nothing in this objection.

No malice being alleged in the declaration as it stands, his Honor was right in charging, under our decisions, that vindictive damages could not be recovered, under the pleadings.

The result is, the judgment must be reversed, and the case remanded for a new trial.

COOPER, J., dissents.