IN THE SUPREME COURT OF TENNESSEE
AT KNOXVILLE
August 31, 2011 Session

## DISCOVER BANK v. JOY A. MORGAN

**Appeal by permission from the Court of Appeals, Eastern Section**
**Circuit Court for Sevier County**
**No. 2006-0172-II     Richard D. Vance, Judge**
_____

**No. E2009-01337-SC-R11-CV - Filed March 27, 2012**
_____

In this consumer protection case, we must determine which Tennessee Rule of Civil Procedure applies to a motion that seeks relief from a default judgment of liability on a counter-complaint, where the motion has been filed within thirty days of entry of the default, the trial court has not expressly directed the entry of judgment on the counter-complaint pursuant to Rule 54.02, and neither liability on the original complaint nor damages on the counter-complaint have been determined.  We hold that Rule 54.02, rather than Rule 60.02, applies in this situation; however, we also hold that the same test applies to motions seeking relief from default judgment, under either rule, on the basis of "excusable neglect."  We also hold that actual damages are recoverable for loss of available credit under Tennessee Code Annotated section 47-18-109(a) (2001) of the Tennessee Consumer Protection Act where the plaintiff suffers a demonstrable loss of credit, proximately caused by the defendant, resulting in actual harm.  For these reasons, we affirm the judgment of the Court of Appeals upholding the default judgment, vacating the award of damages, and remanding the case to the trial court for a new hearing on the amount of damages.

**Tenn. R. App. P. 11 Appeal by permission; Judgment of the**
**Court of Appeals Affirmed; Remanded**

CORNELIA A. CLARK, C.J., delivered the opinion of the court, in which JANICE M. HOLDER, GARY R. WADE, WILLIAM C. KOCH, JR., and SHARON G. LEE, JJ., joined.

Ronald S. Range, Jr., Johnson City, Tennessee, and Gary C. Shockley, Nashville, Tennessee, for the Appellant, Discover Bank.

Jennifer L. Chadwell, for the Appellee, Joy A. Morgan.

## OPINION

### *Factual and Procedural Background*

This case began when Discover Bank ("Discover") filed an action against Joy A. Morgan ("Morgan") on March 23, 2006. In its complaint, Discover alleged that Morgan owed $16,341.52 in principal on a credit card issued by Discover, and that Morgan breached the cardmember agreement by failing to meet its payment terms. Accordingly, Discover sought a judgment for the principal and interest due, as well as for costs and attorney's fees.

Morgan filed an answer and counter-complaint on January 31, 2007.[1] In her answer, Morgan denied that she had ever entered into a contractual agreement with Discover, alleging instead that her deceased husband had accepted the credit card and designated Morgan as a mere "authorized user" of the account. Morgan argued that she was not in breach of the cardmember agreement because she had no contractual agreement with Discover.

In her counter-complaint, Morgan alleged that Discover initially informed her that she would not be held responsible for the account if she provided a copy of her husband's death certificate. After receiving a copy of the death certificate, however, Discover sought collection of the balance from Morgan and reported her nonpayment to the credit reporting agency.

Morgan alleged that this collection action injured her credit in the following ways: she could not refinance her property as expected, (over a longer term at a lower and fixed interest rate), which would have lowered her monthly mortgage payments by at least $200 over fifteen years; her accounts were closed and her credit privileges were suspended by other companies, including MBNA, Citicard, Capital One Bank, and AT&T Universal, which reduced her available credit from $123,400 to $18,000; she was unable to open new credit accounts, including one for $400 with Sears Bank; the annual percentage rate (APR) on her other credit cards increased, including that of her Chase Visa card, which rose from 11.24% to 29.99%; and she could no longer purchase investment homes at the interest rate previously available to her.

In addition to common-law libel, Morgan alleged statutory causes of action under the Fair Debt Collections Practices Act (FDCPA), 15 U.S.C. §§ 1692-1692p (2006),[2] the Fair

---

[1] According to the April 4, 2008 order denying Discover's motion to set aside the default judgment, Morgan was not served with the complaint until January 10, 2007.

[2] Morgan later withdrew this claim at the April 29, 2008 hearing.

Credit Reporting Act (FCRA), 15 U.S.C. §§ 1681-1681x (2006), and the Tennessee Consumer Protection Act (TCPA), Tenn. Code Ann. §§ 47-18-101 to -130 (2001 & 2011 Supp.).

After being served, Discover contacted Morgan's counsel and obtained an extension of time to answer the counter-complaint until April 2, 2007, but that date passed with no response from Discover. Counsel for Morgan sent opposing counsel a letter, dated April 13, 2007, warning that if no answer were received within fourteen days, Morgan would seek default judgment on the counter-complaint, but Discover made no response.

Morgan filed a motion for default judgment on May 4, 2007, which the trial court granted on May 22, 2007. The order decreed that judgment be entered on the counter-complaint in Morgan's favor, but it did not mention Discover's pending complaint. Damages on the counter-complaint also remained unresolved.

Discover filed a motion to set aside the default judgment on June 8, 2007, which sought relief "pursuant to Rule 60.02 of the Tennessee Rules of Civil Procedure" on the ground that counsel for Discover had "documented the wrong hearing date" and that such "inadvertent error" was "excusable pursuant to Rule 60.02 of the Tennessee Rules of Civil Procedure." Discover did not respond to the counter-complaint and offered no explanation for its ongoing failure to do so.

On February 18, 2008, Discover filed an amended motion to set aside the default judgment, in which it sought relief, as before, "pursuant to Rule 60 of the Tennessee Rules of Civil Procedure." Also on February 18, 2008, Discover lodged a response to the counter-complaint, in which it denied liability. Moreover, although Discover could neither admit nor deny whether Morgan had ever been made a joint account holder, it alleged that Morgan had made a balance transfer of $14,500 to the Discover account *after* her husband died, on or about August 27, 2004. In support of this allegation, Discover submitted account statements indicating a payment of $14,500 on September 14, 2004, a purchase of airline tickets on September 21, 2004, and a balance transfer of $14,500 on October 4, 2004. Discover contended that these transactions made Morgan liable for the entire account balance.

On February 21, 2008, Morgan filed a response to the amended motion to set aside the default judgment, which *admitted* that Morgan had transferred $14,500 and purchased the airline tickets after her husband died—but again denied liability. On February 22, 2008,

3

the trial court orally denied Discover's amended motion to set aside the default judgment after a hearing on the issue.[3]

On March 17, 2008, Morgan filed a motion to dismiss the original complaint, "[d]ue to the mutually exclusive nature of the allegations contained in the Complaint and the Counter-Complaint,[4] the Complaint filed by Discover Bank cannot survive in light of the entry of the default judgment on the Counter-Complaint." On March 20, 2008, the trial court granted the motion to dismiss the complaint with prejudice.

The trial court denied Discover's motion to set aside the default judgment on April 4, 2008, noting Discover's failure to timely answer the counter-complaint or respond to the motion for default judgment. Without citing the Tennessee Rules of Civil Procedure, the trial court acknowledged that excusable neglect is a basis for setting aside a default judgment, but the court found that Discover's failure to timely answer the counter-complaint or to appear at the default judgment hearing did not constitute excusable neglect.

On April 22, 2008, Discover moved to set aside the dismissal of its complaint. As a procedural matter, Discover contended that the trial court violated its due process rights by dismissing the complaint ex parte and without proper notice.[5] As to the merits, Discover argued that allegations in the complaint and counter-complaint could not be "mutually exclusive" because the latter sounded in tort while the former relied upon breach of contract.

On April 29, 2008, Discover's counsel appeared at a hearing, originally set ex parte to determine damages on the counter-complaint, although the trial court also heard arguments on Discover's motion to set aside the dismissal of its complaint.[6] At the hearing, the court orally denied the motion to set aside the dismissal of the complaint, affirming its order of March 20, 2008. Morgan then testified as to her damages.

---

[3] The record contains neither a transcript of this hearing nor an order memorializing the trial court's decision.

[4] At oral argument before this Court, Discover agreed that the allegations made in the complaint and counter-complaint are mutually exclusive. Discover argued that, because the complaint "rebutted" the allegations of the counter-complaint, default judgment should not have been granted on the counter-complaint, even though no timely response had been filed. Discover offers no support for this proposition, and we have found none.

[5] Discover has not challenged the dismissal of its complaint on appeal.

[6] At oral argument, Morgan's counsel conceded the impropriety of the March 20, 2008 order, which she had not expected the trial judge to sign without a hearing, but argued that the April 29, 2008 hearing satisfied any due process concerns.

Morgan testified that since May 5, 2005, her available credit had decreased from $123,400 to $5,500,[7] while the interest rates on her Chase card, which carried a balance of $3,000, had increased from 14% to 29.99%. Morgan also testified that, before February of 2005, her "credit cards had [an APR of] one percent, two percent, three percent, mostly." She said that, after February of 2005, she had been denied a credit card for the first time, specifically a Sears Card for $400. Finally, Morgan testified that she could not refinance her home as she had anticipated, which forced her to take out a home equity line of credit instead, resulting in monthly payments $200 higher than the refinancing would have allowed. Morgan did not know what her credit score had been prior to February of 2005.[8] She did not testify at the hearing about any inability to buy investment homes, as alleged in the counter-complaint. Morgan submitted no other evidence in support of these alleged damages.[9]

On this evidence, the trial court found that Morgan had suffered a $117,900 reduction in available credit,[10] $6,800 in additional Home Equity costs,[11] and $500 in additional interest expenses on her credit cards,[12] for a total of $125,200. The trial court made a provisional finding that the TCPA applied and trebled the damages to $375,600, citing Discover's "intentional actions."[13] Finally, the trial court awarded Morgan attorney's fees of $4,460 for a grand total of $380,060.

The trial court issued a final order on June 3, 2008, which memorialized its oral denial of Discover's motion to set aside the dismissal of the complaint, its finding of $125,200 in actual damages, its trebling of the damages to $375,600 (on grounds that Discover had

---

[7] Morgan could not recall whether her available credit had fallen to $18,000 by May of 2006, as alleged in the counter-complaint.

[8] Morgan denied that her credit report contained "anything else negative."

[9] Morgan submitted her counsel's invoice for the purpose of recovering attorney's fees.

[10] We note that $117,900 is the difference between $123,400 and $5,500.

[11] This figure, computed by Morgan's counsel, presumably represents $200 in additional monthly payments for thirty-four months, but the trial court did not explain how it arrived at this amount.

[12] The record does not reflect how the trial court arrived at this figure.

[13] The record is unclear as to whether the trial court based its ruling *only* on the TCPA. At the April 29, 2008 hearing, the trial court appeared to invoke the FCRA: "Three causes of action are alleged. Violation of the Federal Credit Reporting Act, Tennessee Consumer Protection Act [and libel]. Damages liable under the Federal Credit Reporting Act will essentially be the same."

*willfully* violated the TCPA), and its award of $4,460 in attorney's fees. Moreover, the court assessed costs to Discover.[14]

Represented by new counsel,[15] Discover filed a motion to alter or amend the judgment on July 3, 2008. For the first time, Discover argued that the trial court erred when it evaluated the motion to set aside the default judgment of June 8, 2007, pursuant to Rule 60.02, rather than Rule 54.02, of the Tennessee Rules of Civil Procedure. In the alternative, Discover contended that the trial court erroneously applied a stricter standard for relief from judgment after a trial, rather than a more lenient standard governing relief from a default judgment.

Moreover, Discover argued that the final order of June 3, 2008, was legally erroneous for several reasons. Specifically, Discover asserted that it had meritorious defenses to the counter-complaint. Discover also claimed that it had no knowledge of the motion for, entry of, or efforts to set aside the default judgment until May 1, 2008.[16] Discover also maintained that Morgan had admitted facts establishing her liability. Finally, Discover contended that the damages awarded were inappropriate and depended largely on the ephemeral harm of an alleged reduction in available credit. On January 29, 2009, the trial court held a hearing on Discover's motion to alter or amend the judgment. The court denied the motion in its May 29, 2009 order, and Discover timely appealed.

The Court of Appeals upheld the default judgment of liability but vacated the damages award and remanded for a new hearing on damages. Discover Bank v. Morgan, No. E2009-01337-COA-R3-CV, 2010 WL 1998765, at *1 (Tenn. Ct. App. May 19, 2010). In so ruling, the Court of Appeals rejected Discover's assertion that the trial court had evaluated its motion to set aside the default judgment under the wrong procedural rule. Id. at *6. The Court of Appeals declined to decide which Tennessee Rule of Civil Procedure applied, as

---

[14] The order states that Morgan "is entitled to damages as outlined in the ruling by the Court attached hereto and incorporated herein by reference." While the record includes no such attachment, the trial court presumably meant the transcript of the April 29, 2008 hearing.

[15] Incoming and outgoing counsel for Discover filed a joint motion for withdrawal and substitution of counsel on May 7, 2008, which the trial court granted on May 22, 2008.

[16] On this point, Discover submitted an affidavit from its employee, Richard Springer. However, at the April 29, 2008 hearing, Discover's original counsel told the court: "I was in communication with the General Counsel for Discover Bank, to determine what their position was on this Counter-Complaint." This statement indicates that Discover had actual knowledge of the counter-complaint, if not the motion for default judgment.

6

between Rule 60.02 and Rule 54.02, explaining that "if any error was committed, Discover was the party responsible for the error." Id.

Concerning the remand, the Court of Appeals stated that although Morgan's decrease in available credit warranted some measure of damages, the amount should not be calculated on a dollar-for-dollar basis:

> While a decrease in her available credit is something for which Morgan is entitled to reasonable compensation, awarding as damages an amount equal to the decrease in available credit is an inappropriate way in which to measure such a loss because a one dollar decrease in available credit is not proof of one dollar of actual damages.

Id. at *8. The Court of Appeals provided no further guidance to the trial court as to how damages should be computed on remand. We granted Discover's application for permission to appeal.

## Standard of Review

We review a trial court's ruling on a motion to alter or amend a judgment filed pursuant to Tennessee Rule of Civil Procedure 59.04 under the abuse of discretion standard. Stovall v. Clarke, 113 S.W.3d 715, 721 (Tenn. 2003); Linkous v. Lane, 276 S.W.3d 917, 924 (Tenn. Ct. App. 2008). We likewise review for abuse of discretion a trial court's ruling on a Rule 60.02 motion for relief from a final judgment, Henry v. Goins, 104 S.W.3d 475, 479 (Tenn. 2003), as well as a motion to revise under Rule 54.02, Harris v. Chern, 33 S.W.3d 741, 746 (Tenn. 2000) (citing Donnelly v. Walter, 959 S.W.2d 166, 168 (Tenn. Ct. App. 1997)).

Abuse of discretion is found "'only when the trial court applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employed reasoning that causes an injustice to the complaining party.'" State v. Jordan, 325 S.W.3d 1, 39 (Tenn. 2010) (quoting State v. Banks, 271 S.W.3d 90, 116 (Tenn. 2008)). The abuse of discretion standard does not permit an appellate court to merely substitute its judgment for that of the trial court. See Eldridge v. Eldridge, 42 S.W.3d 82, 85 (Tenn. 2001); Henry, 104 S.W.3d at 479. Instead, "[u]nder the abuse of discretion standard, a trial court's ruling 'will be upheld so long as reasonable minds can disagree as to [the] propriety of the decision made.'" Eldridge, 42 S.W.3d at 85 (quoting State v. Scott, 33 S.W.3d 746, 752 (Tenn. 2000)).

7

**Analysis**

In this appeal we address three issues: (1) which procedural rule applies when a defaulting party timely moves to set aside a default judgment while damages and another claim remain undecided; (2) what test applies to the appropriate procedural rule; and (3) the amount of damages, if any, an aggrieved party may recover for loss of available credit under the TCPA. As the first two of these issues are closely related, we address them together; thereafter we consider the damages question.

## I. Motions to Set Aside Previous Decisions

As the circumstances of this case illustrate, confusion may arise as to which procedural rule governs motions to set aside previous trial court decisions. In order to resolve this confusion, we take this opportunity to consider each rule available to parties seeking relief from previous trial court decisions and to explain the stage of the proceedings at which each of these rules applies.

### A. Tennessee Rule of Civil Procedure 54

Pursuant to Tennessee Rule of Civil Procedure 54, "any order or other form of decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . is subject to revision at any time before the entry of the judgment adjudicating all the claims and the rights and liabilities of all the parties." Tenn. R. Civ. P. 54.02; see also Tenn. R. App. P. 3(a) ("[A]ny order that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties is not enforceable or appealable and is subject to revision at any time before entry of a final judgment[17] adjudicating all the claims, rights, and liabilities of all parties.").[18] Thus, motions seeking

---

[17] Consistent with prior Tennessee decisions, "final judgment" has two meanings in our discussion. First, with respect to Rules 54.02 and 59, "final judgment" refers to a trial court's decision adjudicating all the claims, rights, and liabilities of all the parties. See Tenn. R. App. P. 3(a); In re Estate of Henderson, 121 S.W.3d 643, 645 (Tenn. 2003) ("A final judgment is one that resolves all the issues in a case, 'leaving nothing else for the trial court to do.'") (quoting State ex rel McAllister v. Goode, 968 S.W.2d 834, 840 (Tenn. Ct. App. 1997)). In the discussion of Tennessee Rule of Civil Procedure 60, "final judgment" refers both to a decision adjudicating all the claims, rights, and liabilities of all the parties *and* to the fact that more than thirty days have passed since the final judgment was entered. See Campbell v. Archer, 555 S.W.2d 110, 112 (Tenn. 1977) ("The function of [Rule 60.02] is to give relief from *final* judgments; Rule 59, providing for motion for new trial, is the appropriate remedy for asserting alleged errors affecting a judgment which has not yet *become final*." (emphasis added)).

[18] We recognize that Rule 54.02 provides a mechanism by which a trial court may certify that a judgment resolving fewer than all the claims is final and appealable pursuant to Tennessee Rule of Appellate

relief from a trial court's decision adjudicating fewer than all the claims, rights, and liabilities of all the parties, should be filed pursuant to Rule 54.02.

### B. Tennessee Rule of Civil Procedure 59

Tennessee Rule of Civil Procedure 59 expressly authorizes four categories of motions: "(1) under Rule 50.02 for judgment in accordance with a motion for a directed verdict; (2) under Rule 52.02 to amend or make additional findings of fact, whether or not an alteration of the judgment would be required if the motion is granted; (3) under Rule 59.07 for a new trial; or (4) under Rule 59.04 to alter or amend the judgment." Tenn. R. Civ. P. 59.01. Furthermore, the specified motions are the only means "for extending the time for taking steps in the regular appellate process." Id.; see also Tenn. R. App. P. 4(b).

Rule 59.02 provides that "[a] motion for new trial and all other motions permitted under this rule shall be filed and served within 30 days after judgment has been entered in accordance with Rule 58." Tenn. R. Civ. P. 59.02. Rule 58 states in relevant part: "Entry of a judgment or an order of final disposition is effective when a judgment containing one of the following is marked on the face by the clerk as filed for entry . . . ." Tenn. R. Civ. P. 58. Reading Rule 59.02 in conjunction with Rule 58, it is clear that Rule 59 motions relate to final judgments—judgments adjudicating all the claims, rights, and liabilities of all the parties. See Harris v. Chern, 33 S.W.3d 741, 743-44 (Tenn. 2000) ("Rule 59.04 addresses final judgments and requires a motion to alter or amend to be made within 30 days of the entry of judgment."). "The purpose of Tenn. R. Civ. P. 59 motions is to prevent unnecessary appeals by providing the trial courts with an opportunity to correct errors *before a judgment becomes final*." Bradley v. McLeod, 984 S.W.2d 929, 933 (Tenn. Ct. App. 1998) (emphasis added), overruled on other grounds by Harris, 33 S.W.3d at 744. Thus, for thirty days after entry of a final judgment, motions for relief should be premised upon Rule 59.

### C. Tennessee Rule of Civil Procedure 60

In the event that a party waits to seek relief for more than thirty days after entry of a final judgment, the trial court cannot grant relief under Rule 59. See Tenn. R. Civ. P. 59.02. After this time, relief must be sought pursuant to Tennessee Rule of Civil Procedure 60.02. See, e.g., Campbell v. Archer, 555 S.W.2d 110, 112 (Tenn. 1977) ("The function of [Rule 60.02] is to give relief from *final* judgments; Rule 59, providing for motion for new trial, is

Procedure 3(a). Such a certification is an "absolute prerequisite" to creating an appeal as of right. Fox v. Fox, 657 S.W.2d 747, 749 (Tenn. 1983). When a trial court certifies a judgment as final pursuant to Rule 54.02, motions seeking relief from that judgment should be premised upon Rule 59, if filed within thirty days of its entry, and upon Rule 60, if filed more than thirty days after its entry.

9

the appropriate remedy for asserting alleged errors affecting a judgment which has not yet *become final*." (emphasis added)).[19]  Rule 60.02 states in relevant part:

> On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a *final* judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (3) the judgment is void; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that a judgment should have prospective application; or (5) any other reason justifying relief from the operation of the judgment.  The motion shall be made within a reasonable time, and for reasons (1) and (2) not more than one year after the judgment, order or proceeding was entered or taken.  A motion under this Rule 60.02 does not affect the finality of a judgment or suspend its operation, but the court may enter an order suspending the operation of the judgment upon such terms as to bond and notice as to it shall seem proper pending the hearing of such motion.

Tenn. R. Civ. P. 60.02 (emphasis added).

### D.  *Application of the Procedural Rules*

Applying the foregoing principles to the facts of this case, we conclude that the motion seeking relief from the trial court's May 22, 2007 order of default judgment should have been premised on Rule 54.02.  The order of default judgment did not adjudicate all of the claims, rights, and liabilities of all the parties.  Rather, liability on Discover's complaint and damages on Morgan's counter-complaint remained unresolved.  Because the trial court did not adjudicate all the claims between all the parties, or certify the order of default judgment as final pursuant to Rule 54.02, neither Rule 59 nor Rule 60.02 applied.

In so holding, we reject Morgan's contention that Rule 60.02 applied, despite the non-final nature of the May 22, 2007 order of default judgment, by virtue of Rule 55.02, which

---

[19] By comparison, typographical errors in judgments, whether or not final, are subject to correction under Rule 60.01: "Clerical mistakes in judgments, orders or other parts of the record, and errors therein arising from oversight or omissions, may be corrected by the court at any time on its own initiative or on motion of any party and after such notice, if any, as the court orders."  Tenn. R. Civ. P. 60.01.  Likewise, Rule 60(a) of the Federal Rules of Civil Procedure allows courts to correct clerical mistakes "whenever one is found in a judgment, order, or other part of the record."  Fed. R. Civ. P. 60(a).

states: "For good cause shown the court may set aside a judgment by default in accordance with Rule 60.02." Tenn. R. Civ. P. 55.02. The Court of Appeals recently addressed the question of how Rule 55.02 and Rule 60.02 overlap. See Patterson v. Suntrust Bank, 328 S.W.3d 505, 511 (Tenn. Ct. App. 2010). In Patterson, the trial court entered "judgment by default" against the defendant on July 29, 2008, but did not address damages. Id. at 508. The court later awarded the plaintiff damages in an order issued June 2, 2009. Id. at 509. On appeal, the defendant argued that the trial court erred in refusing to set aside the "judgment by default" of July 29, 2008. Id. In this context, the Court of Appeals clarified a common misunderstanding:

> In practice, lawyers frequently refer to an order such as the one entered in this case on July 29, 2008, as a 'judgment by default' or a 'default judgment.' However, it is clear to us—in reading Tenn. R. Civ. P. 55.01—that the 'judgment by default' referred to in Tenn. R. Civ. P. 55.02 is a judgment such as the one entered in this case on June 2, 2009, *i.e.*, *a final judgment*.

Id. at 511. In Patterson, the "default judgment" of July 29, 2008 was not "final" because it did not resolve all the claims between the parties. The trial court "later entered its *final* judgment—which, of course, was a *judgment following a default*—on June 2, 2009." Id. (emphasis added). We agree that "judgment by default," at least for purposes of Rule 55.02, means a *final judgment following a default* that resolves all issues in the case, including damages.

Accordingly, for the reasons explained above, we conclude that Discover's motion seeking relief from the trial court's May 22, 2007 order of default judgment should have been premised upon and evaluated pursuant to Rule 54.02, rather than Rule 60.02. This is true because the order resolved "fewer than all the claims or the rights and liabilities of fewer than all the parties."

*E. Test for Relief*

Having affirmed the proper rule to be used when seeking revisions to a non-final order, we next consider what test for relief should apply.[20] We recognized in Harris that we

---

[20] Morgan maintains that, even if Rule 54.02 properly applies here, Discover should suffer the error it invited by seeking relief pursuant to Rule 60.02. We recognize that appellate courts *need not* grant relief to a party responsible for an error. Tenn. R. App. P. 36(a). We need not address Morgan's invited error argument because we conclude that the test by which a motion to set aside default is evaluated is the same, regardless of which rule applies. Moreover, at every stage of the proceedings, courts are instructed to grant relief from default judgments liberally because of the strong preference for deciding cases on their merits. Keck v. Nationwide Systems, Inc., 499 S.W.2d 266, 267 (Tenn. 1973). Furthermore, Tennessee courts judge

11

had not articulated a standard for courts to apply when ruling on motions filed pursuant to Rule 54 to set aside partial summary judgments, but we noted that other states had applied Rule 59 standards when evaluating such motions under Rule 54. Harris, 33 S.W.3d at 744 (citing Thomas v. Swindle, 676 So. 2d 333, 335 (Ala. Civ. App. 1996)). While no Tennessee case has enunciated the proper test for motions seeking relief from non-final default judgments,[21] following the lead of Harris, we find it appropriate to look to cases applying Rule 59 to motions for relief from final judgments by default.

In Campbell v. Archer, where neither the defendants nor their counsel had notice of the trial date until it began without them, the trial court refused permission to approach the bench upon their arrival, and the jury returned a verdict for the plaintiffs. 555 S.W.2d at 111-12. The defendants sought a new trial on the grounds that their failure to appear was, at most, "excusable neglect," and that the judgment against them was a "default" within the meaning of Rule 55.01, entitling them to notice they had not received. Id. at 112. We held that, regardless of whether such a judgment is a "default," the defendants met the burden for relief under Rule 59. Id. Specifically, we found that (1) the absence had not been willful, (2) the defendants alleged a meritorious defense, and (3) a new trial would not prejudice the plaintiffs. Id. at 112-13. As all three factors favored relief, Campbell did not discuss whether any particular factor was necessary or sufficient.

Soon thereafter, we adopted the same test for evaluating Rule 60.02(1) motions for relief from default judgments on "excusable neglect" grounds, consistent with the federal paradigm:

> In applying Rule 60(b)(1) [of the Federal Rules of Civil Procedure] in the context of default judgments, courts have gone beyond the bare wording of the rule and established certain criteria which should be considered in deciding whether the designated standards have been satisfied. These criteria . . . include (1) whether the default was willful; (2) whether the defendant has a meritorious defense; and (3) the level of prejudice that may occur to the non-defaulting party if relief is granted.

motions by their substance rather than their form. Tenn. Farmers Mut. Ins. Co. v. Farmer, 970 S.W.2d 453, 455 (Tenn. 1998); Bemis Co. v. Hines, 585 S.W.2d 574, 575-76 (Tenn. 1979).

[21] Discover relies on recent cases in which the Court of Appeals has applied the Harris test to motions for relief from a grant of partial summary judgment, where the party improperly sought relief under Rule 60, Taylor v. State, No. M2002-02608-COA-R3-CV, 2005 WL 628500 (Tenn. Ct. App. Mar. 17, 2005); Johnson v. Tanner-Peck, LLC, No. W2008-00767-COA-R3-CV, 2009 WL 3064894 (Tenn. Ct. App. Sept. 25, 2009), but neither case purports to extend the Harris test beyond the partial summary judgment context.

Tenn. Dep't of Human Servs. v. Barbee, 689 S.W.2d 863, 866 (Tenn. 1985) (quoting Davis v. Musler, 713 F.2d 907, 915 (2d Cir. 1983)).[22]  In Barbee, a paternity action, the defaulting party did not seek relief until three months after the default judgment resolved the one and only claim between the parties.  Id. at 864-65.  As more than thirty days had passed since the entry of final judgment, we applied Rule 60.02(1), but we *also* found it immaterial which rule technically governed: "While the Campbell case involved a motion for a new trial under Rule 59 of the Tennessee Rules of Civil Procedure, the analysis employed by the Court in that case is equally applicable to the facts involved in the case at bar."  Id. at 867.[23]  As the Court of Appeals has noted, "Rule 59.04 and Rule 60.02(1) each provide a vehicle for seeking relief from orders entered as a result of 'mistake, inadvertence, or excusable neglect' by a party's counsel."  Ferguson v. Brown, 291 S.W.3d 381, 387 (Tenn. Ct. App. 2008) (quoting Campbell, 555 S.W.2d at 112).

Together with his motion to set aside the default judgment, the defendant in Barbee filed an affidavit in which he denied paternity and stated that neither he nor his attorney had received notice of the trial, which established his paternity of the child in question.  In opposing the motion to set aside, the plaintiff made no claim that it would suffer prejudice if the motion were granted.  On this record, we found that all three factors favored relief: "There has been no showing that the plaintiff suffered any prejudice when the trial court set aside the default . . . .  The record demonstrates that the defendant had a meritorious defense to the plaintiff's claims. . . .  Moreover, there is no proof in the record that the defendant's

---

[22] Most circuits evaluate whether to grant relief from a default judgment due to "mistake, inadvertence, surprise, or excusable neglect," Fed. R. Civ. P. 60(b)(1), by considering the same non-exclusive factors used to determine whether to set aside an entry of default due to "good cause," Fed. R. Civ. P. 55(c). 10 Robert M. Bloom, Moore's Federal Practice § 55.70[2], [3] (3d ed. 2009).  These factors differ from those of Davis only in that some federal circuits replace "willful" with "culpable."  See, e.g., Coon v. Grenier, 867 F.2d 73, 76 (1st Cir. 1989) (willful); Powerserve Int'l, Inc. v. Lavi, 239 F.3d 508, 514 (2d Cir. 2001) (willful); Farnese v. Bagnasco, 687 F.2d 761, 764 (3d Cir. 1982) (culpable); Effjohn Int'l Cruise Holdings, Inc. v. A&L Sales, Inc., 346 F.3d 552, 563 (5th Cir. 2003) (willful); United Coin Meter Co. v. Seaboard Coastline R.R., 705 F.2d 839, 845 (6th Cir. 1983) (culpable); Chrysler Credit Corp. v. Macino, 710 F.2d 363, 367 (7th Cir. 1983) (willful); Johnson v. Dayton Elec. Mfg. Co., 140 F.3d 781, 784 (8th Cir. 1998); Franchise Holding II, LLC v. Huntington Rests. Grp., Inc., 375 F.3d 922, 925-26 (9th Cir. 2004) (culpable); Keegel v. Key West & Caribbean Trading Co., 627 F.2d 372, 373 (D.C. Cir. 1980) (willful).  While some courts apply the same standard for relief from default judgments as for mere entry of defaults, e.g., Macino, 710 F.2d at 367, most federal circuits recognize that relief from a judgment requires a stronger showing than relief from a mere entry of default, e.g., Dayton Elec. Mfg. Co., 140 F.3d at 783.

[23] Even before Barbee, the Court of Appeals extended Campbell to default judgments.  Henson v. Diehl Machs., Inc., 674 S.W.2d 307, 310 (Tenn. Ct. App. 1984).  More recently, we extended Campbell and Barbee to dismissals for failure to prosecute.  Henry, 104 S.W.3d at 481.

13

default was culpable or willful." Barbee, 689 S.W.2d at 868. As in Campbell, therefore, we did not discuss whether any particular factor was dispositive.

While most federal circuits employ a test similar to that of Barbee for deciding whether relief from a default judgment should be granted on "excusable neglect" grounds pursuant to Federal Rule of Civil Procedure 60(b)(1),[24] many decisions from these circuits do not articulate how the three enumerated factors—willfulness (or culpability), a meritorious defense, and prejudice—should be weighed relatively to one another, e.g., Effjohn Int'l Cruise Holdings, Inc., 346 F.3d at 563. Recent cases, however, tend to treat willful or culpable conduct as dispositive. Jenkens & Gilchrist v. Groia & Co., 542 F.3d 114, 122 (5th Cir. 2008) ("If [defendant's] default was willful then the district court's denial of [Federal Rule of Civil Procedure] 60(b)(1) relief may be affirmed on that ground alone."); Franchise Holding II, LLC, 375 F.3d at 926 (holding that the trial court's finding that defendant's culpable conduct led to the default suffices to deny relief—independent of other factors). We think the better view is to condition relief from a default judgment, whether final or interlocutory, on a finding that the defaulting party did not act willfully.

Before today, we have not clearly held that willfulness is a threshold inquiry, but we have implied as much. Campbell, 555 S.W.2d at 113 ("The facts make out a case of mistake, inadvertence, or excusable neglect, rather than one of willful failure to appear."). Moreover, the Court of Appeals has recognized the incompatibility of "willfulness" and "excusable neglect" in several unpublished opinions. See, e.g., Hayes v. Hayes, No. M2006-02356-COA-R3-CV, 2007 WL 2580026, at *2 (Tenn. Ct. App. Sept. 6, 2007) ("An attorney's negligence may constitute excusable neglect under Tenn. R. Civ. P. 60.02(1) so long as that conduct is not willful." (citing Henry, 104 S.W.3d at 481; Barbee, 689 S.W.2d at 866)). Thus, untimely filings or missed court dates may constitute excusable neglect when due to an attorney's carelessness or inattention. See, e.g., Barbee, 689 S.W.2d at 865 (counsel neglected to check mail); Campbell, 555 S.W.2d at 113 (counsel neglected to read notice). On the other hand, "deliberate choices" amount to willful conduct. Barber & McMurry, Inc. v. Top-Flite Dev. Corp., 720 S.W.2d 469, 471 (Tenn. Ct. App. 1986) (counsel chose not to attend trial due to scheduling conflict).

Willfulness also includes "conduct that is flagrant and unexplained." Hayes, 2007 WL 2580026, at *2 (citing Munday v. Brown, 617 S.W.2d 897 (Tenn. Ct. App. 1981)); see also McBride v. Webb, No. M2006-01631-COA-R3-CV, 2007 WL 2790681, at *3 (Tenn. Ct. App. Sept. 25, 2007) ("[Defendant] read the summons and did nothing to respond to the

---

[24] See cases cited supra note 22.

14

Complaint as directed by the summons. This is willful conduct.").[25] The <u>Munday</u> case illustrates this concept.

In <u>Munday</u>, involving a boundary dispute, the defendant's attorney made an appearance, raised the defense of adverse possession, and successfully opposed the plaintiff's request for a preliminary injunction. 617 S.W.2d at 898. A trial date was scheduled and rescheduled several times. <u>Id.</u> Defendant's counsel failed to appear at trial, despite having been served with various motions and orders during the interim. <u>Id.</u> While the defendant, through counsel, eventually moved to set aside the default judgment, she offered no explanation for why her attorney failed to appear at trial; rather, she argued that she *personally* lacked notice. <u>Id.</u> at 899. In upholding the trial court's denial of relief, the Court of Appeals noted that on no less than "ten occasions counsel for the defendant was served with ample warning that if his client intended to further defend plaintiff's suit that action in that regard must be taken." <u>Id.</u> at 898.[26]

Today we clarify that when a party seeks relief from a default judgment due to "excusable neglect," whether pursuant to Rule 54.02 (for interlocutory judgments), Rule 59.04 (for final judgments within thirty days of entry), or Rule 60.02 (for final judgments more than thirty days after entry), a reviewing court must first determine whether the conduct precipitating the default was willful. If the court finds that the defaulting party has acted willfully, the judgment cannot be set aside on "excusable neglect" grounds, and the court

---

[25] This interpretation of willfulness comports with Second Circuit cases that apply the test we adopted in <u>Barbee</u>. Such cases uphold the denial of relief from dismissal or default, where the non-moving party failed to act as required, and its explanation for inaction was either incredible or nonexistent. <u>See, e.g.</u>, <u>Commercial Bank of Kuwait v. Rafidain Bank</u>, 15 F.3d 238 (2d Cir. 1994). In short, willfulness includes conduct that is "egregious and [] not satisfactorily explained." <u>SEC v. McNulty</u>, 137 F.3d 732, 738 (2d Cir. 1998).

[26] As to the lack of fault on the part of the *defendant*, as opposed to the *defendant's counsel*, the Court of Appeals explained:

> If the defendant in this matter was indeed not made aware by her counsel of the myriad of motions and orders filed and entered in this cause leading up to and including the final decree, for whatever reason, it is unfortunate, to say the very least. However, the defendant must look elsewhere for recourse than against the plaintiff whose attorney followed to the absolute letter the provisions of the Tennessee Rules of Civil Procedure in obtaining judgment in this cause.

<u>Id.</u> at 900. Likewise, Discover's lack of actual notice as to the motion for, entry of, and efforts to set aside the default judgment does not circumvent the general rule that errors of counsel are attributable to the client. <u>Panesi v. Boswell</u>, 59 Tenn. (12 Heisk.) 323, 324 (1873).

need not consider the other factors.[27]  If the conduct was not willful, however, then the court must consider whether the defaulting party has a meritorious defense and whether the non-defaulting party would be prejudiced by the granting of relief.  The court may also consider any other factor that it deems relevant.

We recognize that the interest in finality is heightened once a final judgment has been entered.  While the same factors must guide the inquiry, relief from a partial default judgment may be granted more liberally under Rule 54.02 than relief from final default judgments under Rule 59.04 or Rule 60.02.  Cf. Dayton Elec. Mfg. Co., 140 F.3d at 783 (holding that the same factors apply when relief is sought from a final judgment, Fed. R. Civ. P. 60(b), as from a mere entry of default, Fed. R. Civ. P. 55(c), but that relief should be granted more liberally where no final judgment has been entered).

*F. Application of the Test for Relief*

Having determined that the same test for relief applies under Rule 54.02 and Rule 60.02, it follows that the trial court did not abuse its discretion by applying an incorrect legal standard.  See Jordan, 325 S.W.3d at 39.  We next determine whether the trial court abused its discretion by reaching an illogical conclusion, basing its decision on a clearly erroneous assessment of the evidence, or employing reasoning that caused an injustice to Discover.  See id.  In making this determination, we will not substitute our judgment for that of the trial court, Henry, 104 S.W.3d at 479, and will uphold the trial court's ruling "'so long as reasonable minds can disagree as to [the] propriety of the decision made.'"  Eldridge, 42 S.W.3d at 85 (quoting Scott, 33 S.W.3d at 752).

We begin our analysis by considering the actions of Discover's attorney in this case.  Discover contends that its original counsel acted negligently, not willfully, in *failing to oppose* default judgment.  At the April 29, 2008 hearing, original counsel admitted that his office received proper service of the motion for default judgment, but that his staff had failed to forward it to him or calender the hearing date.  He also denied actual personal knowledge of the letter from Morgan's counsel, dated April 13, 2007, warning that Morgan would move for a default judgment unless Discover filed an answer within two weeks.  This neglect,

---

[27] In the interests of judicial economy, trial courts are encouraged to make alternative findings as to the other two factors where expedient to do so.  See Bldg. Materials Corp. v. Britt, 211 S.W.3d 706, 714 (Tenn. 2006).

Discover argues, together with its original counsel's prompt motion to set aside the default judgment, warrants relief due to "excusable neglect."[28]

However, original counsel also admitted at the April 29, 2008 hearing that he had actual notice of the counter-complaint; indeed, he claimed to have discussed the matter with general counsel for Discover and sought a settlement with counsel for Morgan. Moreover, he requested, and received, a time extension in which to file an answer. The answer was not filed within the extension period and was more than a month overdue when Morgan moved for default judgment. Even then counsel failed to lodge a proposed answer with the Court. We are at a loss to understand how the alleged mishaps at original counsel's office, pertaining to the hearing on the motion for default judgment, can justify original counsel's failure to answer the counter-complaint until nine months after the entry of default judgment. At no time did original counsel explain why he waited so long to answer the counter-complaint—not in his motion to set aside the default judgment, not in his amended motion to set aside the default judgment, and not even at the April 29, 2008 hearing. Except for vague references to the transcript of that hearing, Discover has still not explained why it took more than a year to answer the counter-complaint in an action it initiated.

Finding no explanation in the record for this flagrant violation of procedural rules, we deem this conduct "willful" and therefore ineligible for relief on grounds of "excusable neglect."

## II. Damages Recoverable for Loss of Credit

A judgment for default impliedly constitutes an admission of all the properly pleaded material allegations of fact contained in the complaint, except the plaintiff's unliquidated damages. Patterson v. Rockwell Int'l, 665 S.W.2d 96, 101 (Tenn. 1984); State ex rel. Jones v. Looper, 86 S.W.3d 189, 194 (Tenn. Ct. App. 2000). While the record is not entirely clear, the parties agree that the trial court in this case grounded the damages award on the TCPA, which provides a private cause of action for "[a]ny person who suffers an *ascertainable loss* of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated . . . ." Tenn. Code Ann. § 47-18-109(a)(1) (emphasis added). Whether an "ascertainable loss" includes a loss of available credit is an issue of first impression before this Court.[29] While the TCPA does not define "ascertainable loss," the

---

[28] Discover has not sought relief on the grounds of "mistake, inadvertence, [or] surprise," Tenn. R. Civ. P. 60.02.

[29] We have, however, long recognized the existence of a common-law cause of action for a loss of (or damage to) credit and business reputation among merchants. E.g., Doll v. Cooper, 77 Tenn. 576 (1882)

term commonly appears in the consumer protection laws of other states. Victor E. Schwartz & Cary Silverman, Common-Sense Construction of Consumer Protection Acts, 54 U. Kan. L. Rev. 1, 21 (2005). Our Court of Appeals, in the context of injunctive relief sought by the State,[30] surveyed the interpretations that other courts have given this phrase in construing their own statutes:

> In this context, ascertainable losses include losses that would not be [] cognizable [] at common-law.[31] An ascertainable loss is a deprivation, detriment, or injury that is capable of being discovered, observed, or established.[32]
>
> A loss is ascertainable if it is measurable, even though the precise amount of the loss is unknown.[33] An ascertainable loss may include either an out-of-pocket loss or a loss of value.[34] Accordingly, the courts have recognized that an ascertainable loss occurs in circumstances where a consumer receives less than what was promised.[35]

---

(wrongful suit of attachment); J.M. James, Co. v. Cont'l Nat'l Bank, 58 S.W. 261 (Tenn. 1900) (wrongful dishonor of check).

[30] "The court may make such orders or render such judgments as may be necessary to restore to any person who has suffered any ascertainable loss by reason of the use or employment of such unlawful method, act, or practice, any money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated, which may have been acquired by means of any act or practice declared to be unlawful by this part." Tenn. Code Ann. § 47-18-108(b)(1).

[31] Feitler v. Animation Celection, Inc., 13 P.3d 1044, 1047 (Or. Ct. App. 2000).

[32] In re Wiggins, 273 B.R. 839, 856 (Bankr. D. Idaho 2001); Thiedemann v. Mercedes-Benz USA, Inc., 872 A.2d 783, 793 (N.J. 2005); Serv. Rd. Corp. v. Quinn, 698 A.2d 258, 262 (Conn. 1997); Scott v. W. Int'l Surplus Sales, Inc., 517 P.2d 661, 663 (Or. 1972).

[33] Hinchliffe v. Am. Motors Corp., 440 A.2d 810, 814 (Conn. 1981); Rein v. Koons Ford, Inc., 567 A.2d 101, 106-07 (Md. 1989); Talalai v. Cooper Tire & Rubber Co., 823 A.2d 888, 898 (N.J. Super. Ct. Law Div. 2001); Weigel v. Ron Tonkin Chevrolet, Inc., 690 P.2d 488, 494 (Or. 1984); In re W. Va. Rezulin Litig., 585 S.E.2d 52, 75 (W. Va. 2003).

[34] Thiedemann, 872 A.2d at 792.

[35] Hinchliffe, 440 A.2d at 819; Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., 894 A.2d 1136, 1145 (N.J. Super. App. Div. 2006); In re W. Va. Rezulin Litig., 585 S.E.2d at 57.

State v. New Beginning Credit Ass'n, Inc., No. M1999-00461-COA-R3-CV, 2006 WL 1472284, at *8 (Tenn. Ct. App. May 25, 2006).[36] We conclude that section 47-18-109(a)(1) does not preclude actions by consumers premised on loss of consumer credit.

Once an ascertainable loss has been established, the TCPA allows consumers to recover "actual damages," Tenn. Code Ann. § 47-18-109(a)(1), but does not define that term. This Court has recently reaffirmed the distinction between the existence and amount of damages. Hannan v. Alltel Publ'g Co., 270 S.W.3d 1, 10 (Tenn. 2008). "The *existence* of damages cannot be uncertain, speculative, or remote." Id. (citing Overstreet v. Shoney's, Inc., 4 S.W.3d 694, 703 (Tenn. Ct. App. 1999) (damages in tort); Cummins v. Brodie, 667 S.W.2d 759, 765 (Tenn. Ct. App. 1983) (damages for breach of contract)); see also BancorpSouth Bank, Inc. v. Hatchel, 223 S.W.3d 223, 230 (Tenn. Ct. App. 2006). "The *amount* of damages may be uncertain, however, if the plaintiff lays a sufficient foundation to allow the trier of fact to make a fair and reasonable assessment of damages." Hannan, 270 S.W.3d at 10 (citations omitted); see also Hatchel, 223 S.W.3d at 230 ("[T]he evidence upon which a party relies to prove damages must be sufficiently certain to enable the trier of fact, using its discretion, to make a fair and reasonable assessment of damages." (citing Wilson v. Farmers Chem. Ass'n, Inc., 444 S.W.2d 185, 189 (Tenn. Ct. App. 1969)). The burden of proving damages rests on the party seeking them. Hatchel, 223 S.W.3d at 229. In short, a plaintiff may recover damages when she offers "'proof of damages within a reasonable degree of certainty.'" Id. at 230 (quoting Redbud Coop. Corp. v. Clayton, 700 S.W.2d 551, 561 (Tenn. Ct. App. 1985)).

## A. Test for Actual Damages for Loss of Credit

The Court of Appeals has implicitly recognized a right to recover damages for loss of available credit in certain circumstances, although none of the plaintiffs in these cases prevailed on appeal. See, e.g., Filson v. Wells Fargo Home Mortg., Inc., No. M2007-01842-

---

[36] New Beginning Credit Association purported to assist clients with very poor credit by offering them unsecured Visa cards to establish a positive credit history. A combination of high fees, low limits, and misleading advertisements led the State to file a complaint against both the company and its incorporator, pursuant to the TCPA and Tennessee Credit Services Businesses Act. Id. at *2-3. The trial court found the defendants liable under both statutes, which resulted in civil fines, costs, and attorney's fees. Id. at *3. The trial judge denied restitution as impractical, however, and the State appealed. Id.

In vacating the denial of restitution, the Court of Appeals considered whether the clients had suffered an "ascertainable loss." Id. at *7 (quoting Tenn. Code Ann. § 47-18-108(b)(1)). The Court of Appeals ruled that the *fees* consumers paid were the appropriate measure of damages—not the *charges* they made on their cards: "We see no basis for including the credit card debts that consumers voluntarily incurred after obtaining the new Visa cards in the award of restitution under the facts of the present case." Id. at *8 n.20.

COA-R3-CV, 2008 WL 3914899 (Tenn. Ct. App. Aug. 25, 2008) (breach of contract); Crowe v. First Am. Nat'l Bank, No. W2001-00800-COA-R3-CV, 2001 WL 1683710 (Tenn. Ct. App. Dec. 10, 2001) (conversion); Rey v. Hestle, No. 01A01-9110-CV-00399, 1992 WL 102231 (Tenn. Ct. App. May 15, 1992) (legal malpractice).

Similarly, other state and federal courts have impliedly acknowledged a cause of action for loss of available credit, from which we discern three criteria necessary for recovery. First, a plaintiff must have suffered a demonstrable loss of credit. E.g., Divenuta v. Bilcare, Inc., No. 09-3657, 2011 WL 1196703, at *7 (E.D. Pa. Mar 30, 2011) (striking damages for breach of contract claim based on injury to credit score, where plaintiff merely argued that "credit score is a matter of record and if necessary, one could make an inquiry to the credit raters and find out what [plaintiff's] exact score was during any particular time period"); Garza v. Sallie Mae, Inc., No. SA-10-CV-510-XR, 2010 WL 3784197, at *5-6 (W.D. Tex. Sept. 21, 2010) (denying motion to dismiss breach of contract claim where plaintiff alleged that he "suffered damage to his credit rating, his credit balances increased, and his amount of available credit disappeared"); Hoffman v. Aseenontv.com, Inc., 962 A.2d 532, 538 (N.J. Super. Ct. App. Div. 2009) (affirming dismissal of claim for consumer fraud where plaintiff alleged that improper charge reduced his available credit, but "nothing in the record supports the critical assumption that American Express imposed any credit limit on plaintiff's purchases or use of the card"); Kim v. BMW of Manhattan, Inc., No. 601447/05, 2005 WL 3963831 (N.Y. Sup. Ct. 2005) (dismissing RICO claim where plaintiffs failed to allege credit card had a pre-set limit); Auto. Ins. Co. of Hartford Conn. v. Davila, 805 S.W.2d 897, 908 (Tex. App. 1991) (reforming judgment to delete loss of credit damages for breach of good faith and fair dealing claim where plaintiff merely testified that her credit was "totally ruined"), disapproved on other grounds by Hines v. Hash, 843 S.W.2d 464, 469-70 (Tex. 1992).

Second, the defendant must have proximately caused the loss of credit. E.g., Divenuta, 2011 WL 1196703, at *7 (finding insufficient "evidence demonstrating a causal connection between [defendant's] failure to pay incentive compensation allegedly owed to [plaintiff] under the terms of his offer letter and any alleged decline in his credit score"); Erdman v. White, 411 N.E.2d 653, 659 (Ind. App. 1980) (finding "sufficient evidence to show a causal link between the [defamatory] letter sent by [defendant] to . . . the Bank and the subsequent failure of [plaintiff] to obtain a sufficient line of credit to operate his business"); Mead v. Johnson Grp., Inc., 615 S.W.2d 685, 688 (Tex. 1981) (finding "some evidence to support the jury finding of proximate cause"); Bailey v. Fleming, No. 14-95-01470-CV, 1997 WL 634166, at *5 (Tex. App. Oct. 16, 1997) (finding evidence "sufficient to support the trial court's finding that [plaintiff] did in fact suffer damage to his credit and that [defendant] was the proximate cause of such damage").

20

Third, the loss of credit must have caused actual harm to the aggrieved party, such as lost profits or added costs. For example, Pennsylvania has long recognized that some further injury must be shown to recover damages for loss of credit. See Johnson v. Four States Enters., Inc., 355 F. Supp. 1312, 1318 (E.D. Pa. 1972) (under state law, "loss of credit, standing alone, is not proof of damage, unless the loss of credit connects itself with some tangible pecuniary loss of which the loss of credit was the cause." (citing Eckel v. Murphey, 15 Pa. 488, 495 (1850)). The Supreme Court of Texas appears to have gone a step further in holding that "a plaintiff does not suffer actual damage merely from the inability to obtain a loan." St. Paul Surplus Lines Ins. Co. v. Dal-Worth Tank Co., 974 S.W.2d 51, 53 (Tex. 1998) (per curiam). In short, courts generally require plaintiffs to show something more than mere loss of credit.

In particular, plaintiffs fail to recover when they proffer little or no evidence that the loss of credit caused by the defendant led to a subsequent, concrete injury. E.g., Divenuta, 2011 WL 1196703, at *8 ("[E]ven if [plaintiff] could prove that his credit score declined as a result of [defendant's] alleged breach, to recover damages [plaintiff] would still have to demonstrate that the decline in his credit resulted in a 'tangible pecuniary loss.'" (quoting Four States Enters., Inc., 355 F. Supp. at 1318)); St. Paul Surplus Lines Ins. Co., 974 S.W.2d at 53 ("[Plaintiff] had strong credit before filing for bankruptcy, perhaps as much as $2.75 million, and weak credit afterwards, maybe as little as $250,000. But there is no evidence that the decline injured [plaintiff] in any way because [it] never needed to use the credit and never tried to do so."); Pourmemar v. Chase Home Fin., L.L.C., No. 01-10-00474-CV, 2011 WL 5026189, at *3 (Tex. App. Oct. 20, 2011) (finding "no evidence of actual damages due to loss of credit reputation").

Plaintiffs may recover for loss of credit when they can demonstrate how the credit they lost would have resulted in specific profits or savings. E.g., Erdman, 411 N.E.2d at 659 ("[Plaintiff] also testified as to the importance of having a large line of credit available in order to purchase airplanes that suddenly became available . . . ."); Tempo, Inc. v. Rapid Elec. Sales & Serv., Inc., 347 N.W.2d 728, 733 (Mich. Ct. App. 1984) (per curiam) (withdrawn credit line resulted in additional interest of $90,000 and lost discounts of $4,500); EMC Mortg. v. Jones, 252 S.W.3d 857, 873 (Tex. App. 2008) ("[Plaintiff] concluded that [defendant's] reporting of the foreclosure on his credit report would result in his having to pay an additional $163,000 [in higher interest]."); see also Cortez v. Keystone Bank, Inc., No. 98-2457, 2000 WL 536666, at *12 (E.D. Pa. May 2, 2000) (denying motion for summary judgment on RESPA claim where plaintiffs offered evidence that "their available credit was decreased by the amount of outstanding interest charges on the account during any given week and they were thus unable to earn interest on other accounts").

21

*B. Application to this Appeal*

Few facts as to Morgan's alleged losses were proffered at the April 29, 2008 hearing. Morgan testified that her available credit had fallen from $123,400 to $5,500, but she did not explain how this credit was *used* in the past or *needed* in the future. While Morgan claimed that several credit card companies closed her accounts, she did not indicate what purchases she regularly made with those cards, whether she could buy the same goods and services with her remaining credit (or cash), or the appreciation (or depreciation) of those items. We certainly do not suggest that Morgan can recover the purchase price of things she would have bought but for her loss of credit;[37] rather, we reiterate that Morgan must "lay[] a sufficient foundation to allow the trier of fact to make a fair and reasonable assessment of damages." Hannan, 270 S.W.3d at 10.

In her counter-complaint, Morgan alleged that she "purchases investment homes" for supplemental income, and that her negative credit history rendered her "unable to purchase these homes at her previous interest rates." A lost investment opportunity may warrant damages for loss of available credit, but considerably more detail is required "to enable the trier of fact, using its discretion, to make a fair and reasonable assessment of damages." Hatchel, 223 S.W.3d at 230 (citing Wilson, 444 S.W.2d at 189). Morgan also failed to address this purported loss of opportunity at the April 29, 2008 hearing. For example, she did not testify as to what interest rates she previously obtained, what profits she enjoyed (or losses she suffered) from her previous transactions, what actual opportunities to purchase she has in the current market, what profits she expected from additional purchases, and what interest rate, if any, she eventually obtained from lenders for this purpose.

The trial court awarded Morgan "$6800 for additional Home Equity Costs," as proposed by Morgan at the April 29, 2008 hearing. Neither the court nor Morgan offered any explanation as to how this figure had been computed, but Morgan alleged in her counter-complaint that "refinancing of her property could have lowered her interest rate from an 8%, 15 year variable interest rate to a fixed 30 year, 6.25% interest rate and would have lowered her monthly mortgage payments by at least $200.00 a month for at least 15 years." Taken as true, this suggests that the trial court calculated this award on Morgan's additional costs over thirty-four months. In any event, the details alleged do provide some "foundation to allow the trier of fact to make a fair and reasonable assessment of damages." Hannan, 270 S.W.3d at 10.

The trial court further awarded Morgan an "additional $500 in higher interest rates on [credit] cards," again without explanation as to how this number had been computed.

---

[37] Cf. case discussed supra note 36.

Morgan alleged, however, that the APR on Morgan's Chase Visa card increased "from 11.24% before the collection actions by Discover Bank, to 29.99% after the collection actions." At the hearing, Morgan testified that the Chase card had a balance of $3000 when the APR rose. While the math here is a bit fuzzy, the trial court at least had specific facts from which to determine damages. See Hatchel, 223 S.W.3d at 230 ("While the amount of damages to be awarded in a given case is not controlled by fixed rules of law or mathematical formulas, Overstreet, 4 S.W.3d at 703, the evidence upon which a party relies to prove damages must be sufficiently certain to enable the trier of fact, using its discretion, to make a fair and reasonable assessment of damages, Wilson, 444 S.W.2d at 189.").

Because we have never previously determined the requirements to prove damages for loss of consumer credit, we believe Morgan is entitled to a new hearing on this matter. We therefore remand the case to the trial court. On remand, after a new hearing, the trial court must specify which of Morgan's causes of action support any award of damages. If multiple theories allow Morgan to recover damages, the court must allow Morgan to elect her choice of remedies. See Concrete Spaces, Inc. v. Sender, 2 S.W.3d 901, 909 (Tenn. 1999). The award of actual damages shall be determined in a manner consistent with this opinion.

## Conclusion

A party seeking relief from a partial default judgment of liability on a counter-complaint, where other matters remain unresolved, must file a motion to revise the order under Tennessee Rule of Civil Procedure 54.02. The grounds for granting relief for such a motion are the same as for review under Rule 60.02: mistake, inadvertence, surprise or excusable neglect, and the standard of review is abuse of discretion. In this case, although the trial court erroneously reviewed the motion under Rule 60.02, the judge did not abuse his discretion by declining to set aside the default. Under Tennessee Code Annotated section 47-18-109(a), actual damages are recoverable for the loss of available consumer credit due to the actions of a defendant, if they can be proven with particularity.

The judgment of the Court of Appeals upholding the trial court's denial of Discover's motion to set aside the default judgment is affirmed. We vacate the award of damages and remand this case to the trial court for a new hearing on damages consistent with this opinion. At this hearing, Morgan will be afforded the opportunity to prove that she has suffered a demonstrable loss of credit, proximately caused by Discover, that resulted in actual harm to her—in enough detail to allow the trial court to make a fair and reasonable assessment of the actual damages.

The costs of this appeal are taxed to Discover Bank and its surety, for which execution may issue if necessary.

_____
CORNELIA A. CLARK, CHIEF JUSTICE