IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 26, 2013 Session

**HOLLY D. BUTLER v. TIMOTHY K. VINSANT**

**Direct Appeal from the Juvenile Court for Robertson County**
**No. 1035022          Melanie Earl Stark, Magistrate**

**No. M2012-01553-COA-R3-JV - Filed April 15, 2013**

Appellant appeals from the trial court's denial of a motion to vacate a default judgment. Discerning no error, we affirm and remand.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Juvenile Court Affirmed and Remanded**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which DAVID R. FARMER, J., joined, and HOLLY M. KIRBY, J., filed a partial dissenting opinion.

Jonathan A. Garner, Springfield, Tennessee, for the appellant, Timothy K. Vinsant.

Kimberley L. Reed-Bracey, Goodlettsville, Tennessee, for the appellee, Holly D. Butler.

**OPINION**

I. Background

On August 30, 2010, Appellee Holly Butler ("Mother") filed a petition to set child support for her two minor children, Timothy K., born in 2005, and Reagan E., born in 2006. The petition was filed against Appellant Timothy K. Vinsant ("Father"), whom Mother alleged was the biological parent of the two children. Mother asked the court to set child support and require Father to obtain health insurance for the children. On September 30, 2010, Father filed a response in which he admitted paternity of the children, but denied that he owed child support because the minor children were living with him the majority of the time. Father also alleged that Mother was able to obtain more affordable health insurance for the minor children through her employment. On the same day, Father filed a Petition to Legitimate and for Custody and Support under another docket number, asking to be named the children's primary residential parent.

Mother subsequently hired another attorney. On December 10, 2010, the trial court ordered that Mother's and Father's petitions be consolidated into one docket number. The trial court continued the case to allow Mother time to amend her petition to include issues pertaining to custody, as well as support. On February 1, 2011, Father's initial attorney withdrew and was replaced by attorney Jack West. On July 18, 2011, Mother filed an Amended Petition, seeking to be named primary residential parent of the children, to be allowed to move for employment purposes, and for child support. Mother's petition also alleged that Father had engaged in domestic violence toward Mother, had stalked her, and had left the children without supervision on at least one occasion. Father never filed an answer to Mother's Amended Petition.

On September 19, 2011, Mother filed a Motion for Default and to set the case for a final hearing. The trial court granted the motion and set the case for a final hearing on November 16, 2011. Father did not appear at the hearing.

On December 7, 2011, the trial court entered a final order in the case. First, the trial court granted Mother a default judgement, noting that Father had neither answered Mother's Amended Petition, nor appeared at the hearing, despite the fact that a notice of the hearing was sent by U.S. mail to both his current and former attorney. The trial court also established paternity, based on Father's action in filing a voluntary notice of paternity. Next the trial court established Mother as primary residential parent of the children and allowed Mother to move to Clarksville, Tennessee for employment reasons. The trial court granted Father standard every-other-weekend visitation and imputed income for child support purposes at the rate set by the child support guidelines. The trial court further awarded Mother a child support arrearage of $15,577.00. The arrearage was based on the trial court's finding that Mother and Father were spending substantially equal amounts of time with the children prior to trial. Father was ordered to pay $100.00 per month toward the arrearage, as well as $1,287.00 per month in base child support. The trial court also awarded Mother a judgment for half of the children's medical expenses and attorney fees in the amount of $3,000.00.

On March 12, 2012, Father, with the assistance of a new attorney, filed a Rule 60.02 motion to vacate the default judgment. Attached to the motion were affidavits from Father and an attorney he had previously consulted in response to Attorney West's inability to remain on the case, Attorney Jennifer L.E. Williams.[1] In these affidavits, Father and

---

[1] We note that the attorney Father initially consulted after Attorney West's inability to proceed with the case, Attorney Williams, is not the attorney who ultimately represented Father in his request for Rule 60.02 relief, or on this appeal. Instead, by the time Father filed his Rule 60.02 motion on March 12, 2012, Father had finally retained a new attorney to represent him in this case. The record is unclear at what point

(continued...)

Attorney Williams state that Father's failure to answer or appear at trial was excusable due to the neglect of Father's prior attorney, Mr. West, in allegedly failing to forward Father's file to Attorney Williams, as Father had requested that Attorney West do. In addition, Father attached emails from Mr. West in which the attorney directed Father to retain new counsel due to the prior attorney's new employment with a non-profit organization. These emails show that Attorney West informed Father that he needed to retain a new attorney and, preferably, inform Mother's counsel of the change in attorney. The email correspondence can be summarized as follows:

> June 21, 2011: Attorney West acknowledges that Father has agreed to retain new counsel due to Attorney West's new position.
>
> August 12, 2011: Attorney West requests that Father inform him, or preferably Mother's attorney, of the name of the newly retained counsel, so that the trial court may be informed of the change.
>
> September 27, 2011: Father responds that he has an appointment to meet with new counsel in the following week.
>
> November 2, 2011: Father requests that his file be sent to Attorney Williams.[2]

Mother filed a response, denying that Father was entitled to relief, on April 20, 2012. The trial court denied the Rule 60.02 motion. This appealed followed.

## II. Analysis

The sole issue in this case is whether the trial court erred in denying Father's Rule 60.02 motion. Rule 60.02 of the Tennessee Rules of Civil Procedure provides, in pertinent part:

---

[1](...continued)
Father actually retained his current counsel.

[2] Although Father requested that Attorney Williams be sent his court file, Father maintains in his affidavit that he never retained Attorney Williams. Nevertheless, Attorney Williams states in her affidavit that she consulted with Father, agreed to take on the case for an agreed retainer fee, and received an email from Attorney West regarding the transfer of Father's file.

On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; . . .

The Tennessee Supreme Court recently explained the standard of review regarding the denial of a motion pursuant to Rule 60.02.

> We . . . review for abuse of discretion a trial court's ruling on a Rule 60.02 motion for relief from a final judgment[.] *Henry v. Goins*, 104 S.W.3d 475, 479 (Tenn. 2003). Abuse of discretion is found "'only when the trial court applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employed reasoning that causes an injustice to the complaining party.'" *State v. Jordan*, 325 S.W.3d 1, 39 (Tenn. 2010) (quoting *State v. Banks*, 271 S.W.3d 90, 116 (Tenn. 2008)). The abuse of discretion standard does not permit an appellate court to merely substitute its judgment for that of the trial court. *See Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001); *Henry*, 104 S.W.3d at 479. Instead, "[u]nder the abuse of discretion standard, a trial court's ruling 'will be upheld so long as reasonable minds can disagree as to [the] propriety of the decision made.'" *Eldridge*, 42 S.W.3d at 85 (quoting *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000)).

*Discover Bank v. Morgan*, 363 S.W.3d 479, 487 (Tenn. 2012).

Despite this strict standard of review, Rule 60.02 motions should be viewed liberally when the movant seeks relief from a default judgment. *Pryor v. Rivergate Meadows Apartment Assocs. Ltd. P'ship*, 338 S.W.3d 882, 885 (Tenn. Ct. App. 2009) (citing *Tenn. Dep't of Human Servs. v. Barbee*, 689 S.W.2d 863, 866 (Tenn. 1985)). Therefore, "the court should grant the application whenever there is reasonable doubt as to whether the default judgment should be set aside." *Rivergate Meadows*, 338 S.W.3d at 885 (citing *Tenn. State Bank v. Lay*, 609 S.W.2d 525, 527 (Tenn. Ct. App. 1980)).

This Court recently discussed the burden on the party seeking relief from a default judgment due to "mistake, inadvertence, surprise or excusable neglect" in *Pryor v. Rivergate Meadows Apartment Assocs. Ltd. P'ship*, 338 S.W.3d 882 (Tenn. Ct. App. 2009):

-4-

The party seeking relief under Rule 60.02(1) has the burden to "offer proof of the basis on which relief is sought." *Henry v. Goins*, 104 S.W.3d 475, 482 (Tenn. 2003). To meet this burden, the movant must "set forth in a motion or petition and supporting affidavits facts explaining why the movant was justified in failing to avoid the mistake, inadvertence, surprise or neglect." *Lay*, 609 S.W.2d at 527. Three factors must be considered when determining if a default judgment should be vacated under Rule 60.02(1): "(1) whether the default was willful; (2) whether the defendant has a meritorious defense; and (3) whether the non-defaulting party would be prejudiced if relief were granted." *Henry v. Goins*, 104 S.W.3d 475, 481 (Tenn. 2003) (citing *Tenn. Dep't of Human Servs. v. Barbee*, 689 S.W.2d 863, 866 (Tenn. 1985)). Again, the trial court "is in the best position to assess the various factors that should be considered in determining whether a default judgment should be vacated." *Barbee*, 689 S.W.2d at 867.

These factors—willfulness, meritorious defense, and prejudice—have not replaced the Rule 60.02(1) reasons of mistake, inadvertence, surprise or excusable neglect. *Bowers v. Gutterguard of Tenn., Inc.*, No. M2002-02877-COA-R3-CV, 2003 WL 22994302, at *7 (Tenn. Ct. App. Dec. 17, 2003). Specifically, Tennessee courts have wrestled with the apparent incompatibility of "excusable neglect" and "willfulness." A recent Tennessee decision explained the relationship as follows: "[t]his approach has been to find that negligence, a form of neglect, may be excusable and to employ wilfulness as a critical factor in distinguishing neglect that is excusable from that which is not." *World Relief Corp. of Nat'l Ass'n of Evangelicals v. Messay,* No. M2005-01533-COA-R3-CV, 2007 WL 2198199, at *7 n.9 (Tenn. Ct. App. July 26, 2007).

*Rivergate Meadows*, 338 S.W.3d at 886. Accordingly, this Court must consider whether the Father's inaction was willful, whether he has set forth a meritorious defense, and whether Mother would be prejudiced if the relief were granted.

Because his failure to do so is dispositive of a number of issues in this case, we begin with the question of whether Father has set forth a meritorious defense to the default judgment. As explained by this Court:

The Tennessee Supreme Court has found that excusable neglect is insufficient to set aside a default judgment; *the movant must also demonstrate a meritorious defense to the plaintiff's claim. Patterson v. Rockwell Int'l*, 665 S.W.2d 96, 100 (Tenn. 1984). A conclusory statement, such as "[the movant] believes itself to have a good and valid defense," is insufficient. *Id.* at 101. *See also Turner v. Turner*, 739 S.W.2d 779, 781 (Tenn. Ct. App. 1986) (finding that an affidavit, which stated "[m]y wife has taken a considerable amount of our property which I feel the court would have awarded to me if I could have been present at the hearing," did not assert a meritorious defense).

*Rivergate Meadows*, 338 S.W.3d at 886 (emphasis added). As such, Father had the burden to set forth a meritorious defense to Mother's claims in his motion for Rule 60.02 relief and accompanying affidavits.

For example in *Rivergate Meadows*, this Court held that a Rule 60.02 motion, in which the moving party set forth no defense, was insufficient to justify relief from the default judgment, regardless of whether the failure to appear and defend the case was willful. *Id.* In another case, *State of Franklin Bank v. Riggs*, No. E2010-01505-COA-R3-CV, 2011 WL 5090888 (Tenn. Ct. App. Oct. 27, 2011), this Court held that mere conclusory allegations contained in a Rule 60.02 motion or affidavit were insufficient to meet the moving party's burden to show a meritorious defense. In *Riggs*, the defendants failed to file an answer to a complaint for the remaining balance on a construction loan after foreclosure of the property and a default judgment was ultimately awarded against them. *Id.* at *1. The defendants subsequently sought Rule 60.02 relief from the judgment. Regarding their defense to the relevant count by the bank, the defendants asserted that the property appraised at a much higher value than realized at the foreclosure sale. The trial court denied the defendants' motion on that count, finding that the defendants failed to assert a meritorious defense. *Id.* at *2. On appeal, this Court agreed, stating:

The [d]efendants are correct in their assertion that they were not required to prove their defense, but they were required to assert a meritorious defense, namely a defense that at least had the potential of succeeding at trial. We, like the trial court, believe the defense was not meritorious because the [d]efendants did not *submit evidence* that could have overcome the presumption that the foreclosure price was commensurate with the fair market value of the properties.

***Id.*** at \*5 (emphasis added). Accordingly, a party seeking Rule 60.02 relief from a default judgment must "submit evidence" that, at least, has the potential of succeeding at trial. ***Id.*** Therefore, we will consider the evidence submitted by Father in support of his defense.

Father included an affidavit, signed under oath, supporting his claim for Rule 60.02 relief. In his affidavit, Father states:

> I had originally filed a petition seeking custody and to set visitation with my children. I also wanted to establish a child support payment. I have reviewed my original petition and I renew my statement I made under oath in that document. I did not get an opportunity to offer my own evidence with regard to any of these issues.

Thus, Father averred that he was raising all of his original allegations contained in his previous sworn petition. Turning to Father's sworn petition, he asserts, in relevant part:

> 11. That from the time of the children's births until October 5, 2008, the parties resided together with the minor children, and [Father] was the primary provider for both [Mother] and the minor children.
> 12. That since the parties separated on October 5, 2008, the parties have exercised substantially equal parenting time with the children, by alternating the children's time with each parent week-to-week, and the children have resided with [Father] 53% of the time, specifically 382 of the 725 days to date since the parties separation.
> 13. That [Father] can provide a loving moral, and stable environment for the minor children and further provide for the children's financial, educational and medical needs.
> 14. That [Father] further avers that he is ready, willing, and able to provide all things necessary for the proper care and development of the minor children.

Despite the proffer in Father's affidavit, this Court has held that "[a] sworn petition is not evidence." ***State v. Hartley***, No. 89-74-II, 1989 WL 44905, at \*4 (Tenn. Ct. App. 1989), *aff'd*, 790 S.W.2d 276 (Tenn. 1990). Therefore, the sworn petition may not meet the requirement in ***Riggs*** to "submit evidence" supporting the defense. *See **Riggs***, 2011 WL 5090888, at \*5. Even assuming *arguendo* that Father's sworn petition may be considered evidence, we conclude that Father has only set forth a meritorious defense on the child

custody issue, but has failed to set forth anything other than conclusory allegations regarding his child support obligation, arrearage, and the award of medical expenses.

From what we can discern from the conclusory allegations in the record on this issue,[3] we conclude that Father's alleged error with the trial court's child support rulings concerns the imputation of income to Father at an amount far exceeding his actual income. Indeed, the trial court apparently agreed with Father's allegations that prior to trial, Father spent a substantially equal amount of time with the child. Thus, Father's alleged defense concerns only his actual income. However, Father's petition contains no allegations regarding his current income from which the trial court or this Court could possibly conclude that the trial court's calculations on this issue were in error. Father likewise fails to include any such evidence or allegations in his sworn affidavit. Instead, his affidavit simply contains the conclusory statement that he "wanted to establish a child support payment." However, it is well-settled that conclusory statements are insufficient to establish a meritorious defense. *Turner v. Turner*, 739 S.W.2d 779, 781 (Tenn. Ct. App. 1986). In addition, nothing in Father's Rule 60.02 motion or accompanying affidavit assigns any other error to the trial court's calculation of the alleged child support arrearage or the award of medical expenses. Thus, Father has failed to "submit evidence" from which a court could possibly conclude that the income imputed to Father for child support purposes or that the arrearage or medical expenses awarded to Mother were in error. *See **Riggs***, 2011 WL 5090888, at *5.

Father's allegations in his complaint, however, if taken as true, show that he has a loving relationship with the children and that he has been the children's primary caregiver as much, or even more so, than Mother. The question of which parent is the primary caregiver of the children is certainly relevant to questions of custody and parenting time. *See* Tenn. Code Ann. 36-6-106(a) (outlining the factors to be considered in naming a primary residential parent). Accordingly, if we assume *arguendo* that allegations in a sworn petition are sufficient to "submit evidence" of a meritorious defense, we must conclude that Father has met his burden to assert a defense that had the possibility of succeeding at trial with regard to the child custody issues in this case. Having met his burden to set forth a meritorious defense on the child custody issues, we move on to consider the remaining requirements to succeed on a Rule 60.02 motion for relief from a default judgment.

---

[3] In Father's Motion to Suspend Child Support Payments pending resolution of his motion for Rule 60.02 relief, Father alleges that the his child support obligation requires him to pay more than 50% of his disposable income in child support and that the child support calculations are "inaccurate." However, Father does not reference the allegations in this motion in his request for Rule 60.02 relief, nor does he include any evidence of his current income from which this Court could possibly conclude that the calculations are indeed inaccurate. Further, the allegations contained in the Motion to Suspend are not sworn to by Father. Therefore, Father has failed to meet his burden to establish a meritorious defense on this issue.

As previously discussed, the Court must also consider whether the moving party's failure to appear and defend the case was willful. ***Rivergate Meadows***, 338 S.W.3d at 886. (citing ***Henry***, 104 S.W.3d at 481). The term "willful" has been defined by the Tennessee Supreme Court:

> [W]illful conduct consists of acts or failures to act that are intentional or voluntary rather than accidental or inadvertent. Conduct is "willful" if it is the product of free will rather than coercion. Thus, a person acts "willfully" if he or she is a free agent, knows what he or she is doing, and intends to do what he or she is doing.

***Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.***, 249 S.W.3d 346, 356 (Tenn. 2008); *see also* ***McBride v. Webb***, No. M2006-01631-COA-R3-CV, 2007 WL 2790681, at *3 (Tenn. Ct. App. Sept. 25, 2007) (providing that willfulness includes a strategic decision and conduct that is more than mere negligence or carelessness but is egregious and not satisfactorily explained). With regard to willfulness, the trial court found that Father's failure to appear was willful because he was put on notice by his prior attorney that he needed to quickly retain a new attorney in order to proceed with his case. Specifically, the trial court stated:

> The Court finds that [Father's] conduct was willful because he was on notice and was encumbered to do something, take some kind of action or steps to retain new counsel, proceed pro se, or notify the Court of then existing client-attorney dilemma. [Father] knew litigation was pending of great importance that concerned his children, his own rights to his children and that he had an obligation to act promptly. It is this Court's opinion that [Father's] actions or lack thereof are willful when [Father] does nothing after repeated advice and notice and does not respond to nor advance the litigation upon repeated advice of former Attorney of Record . . . for [Father] to take some kind of action. It is evidence to the Court that [Father's] lack of action/response was to further frustrate the legal process and delay proceedings; further delaying [Father's] legally required financial obligation to support his children.

* * *

The record shows that [Father] simply "dropped off" and chose to do nothing for a period of approximately [six] months or until wage assignment became effective pursuant to Default Judgment Order entered December 6, 2011. Then new counsel retained and Motion to Vacate Judgment Pursuant to [] Rule [] 60.02 is filed on March 12, 2012. Over the aforementioned six month period, [Father] knew or having reason to know there was pending litigation of great important and priority concerning his children, his rights, his cause of action to custody and visitation and that he has a duty to support, he did nothing and chose to "wait and see." [Father] had more than sufficient knowledge and notice of his former Attorney of Record's situation and status concerning the litigation and [Father] was encumbered to notify the Court of any changes of counsel, need of time to retain new counsel, or if [he] would be proceeding pro se. There was no mistake inadvertence, surprise, nor excusable neglect.

Father urges us to hold that the trial court abused its discretion in deeming his inaction "willful" because he did not have actual notice of the proceedings and, therefore, did not make an intentional decision not to appear. Mother does not dispute Father's contention that he did not have actual notice of the proceedings. As a general rule, Tennessee courts have found that "failure of notice of a critical step in a lawsuit can constitute justification for excusable neglect" under Tenn. R. Civ. P. 60.02(1). ***Rivergate Meadows***, 338 S.W.3d at 886 (citing ***Estate of Vanleer v. Harakas***, No. M2001-00687-COA-R3-CV, 2002 WL 32332191, at *6 (Tenn. Ct. App. Dec. 5, 2002)). However, this Court has also held that a mere finding that a party's action was not willful does not, *ipso facto*, require a finding that the failure to appear was the result of excusable neglect. *See **Riggs***, 2011 WL 5090888, at *5. For example in ***Riggs***, this Court held that, although the defendants failure to appear and defend the action was not willful, their neglect was nevertheless inexcusable. *Id.* The Court explained that the defendants were aware of the deadlines in the case and the fact that they had not received an extension. Despite this knowledge, the defendants elected to hire another attorney during the pendency of the proceedings, further delaying any response to the complaint. *Id.* Thus, the Court focused on the defendants' knowledge of the pendency of the proceedings and their delay in obtaining a new attorney as evidence that their failure to defend the action was not excusable. Accordingly, the Court of Appeals affirmed the denial of Rule 60.02 relief. Thus, the question presented in this case is whether Father's inaction in promptly obtaining a new attorney and staying abreast of the proceedings was (1) willful; (2) something less than willful, yet still not excusable; (3) or excusable. Only if Father's neglect was excusable, will this factor militate in favor of vacating the default judgment.

Father contends that his inaction was excusable because it was based on the negligence of Attorney West, on whom he relied to his detriment. To support his argument, Father relies on the case of **Dotson v. Dotson**, No. M2002-02578-COA-R3-CV, 2004 WL 73269 (Tenn. Ct. App. Jan. 16, 2004). In **Dotson**, the trial court granted a default judgment in a divorce case due to the defendant-husband's delay in filing an answer to the complaint, which was filed on April 18, 2002. **Id.** at *1–2. The plaintiff-wife in **Dotson** filed a motion for a default judgment on June 13, 2002, after husband failed to answer for nearly sixty days. A hearing on the motion was set for July 19, 2002. Husband filed an answer and counterclaim on July 18, 2002. Due to this filing, husband's attorney informed him that he was not required to be present and defend against the motion for default judgment. **Id.** at *1. The trial court nevertheless granted the default judgment. Husband filed a motion for a new trial pursuant to Rule 60.02, which the trial court denied. **Id.** at *2. The Court of Appeals affirmed the trial court's grant of the default judgment, but reversed the court's refusal to grant relief pursuant to rule 60.02. **Id.** at *2–*3. The Court of Appeals explained that husband's failure to appear was based on his reasonable reliance on his attorney's advice:

> The undisputed evidence supporting [husband's] motion for relief from [wife's] default judgment shows that his former lawyer told him that he would not be required to attend the July 19, 2002 hearing on [wife's] motion for default because an answer had been filed. It is also undisputed that when his lawyer called him from the courthouse on the morning of July 19, 2002, [husband] was unable to attend court because he had no driver's license and because he was unable to arrange transportation on such short notice. While his lawyer's advice is questionable, we decline to find that [husband] acted unreasonably by following his lawyer's advice. Accordingly, his lawyer's unexpected telephone summons to court amounts to surprise, and [husband's] failure to come to court was excusable in light of his transportation difficulties.

**Id.** at *3. In addition, the Court noted that husband's lawyer did not participate in the hearing on the default judgment motion because he planned to withdraw due to a conflict of interest. The Court noted that:

> The record does not reveal whether [husband] was aware prior to July 19, 2002 that his lawyer intended to withdraw from his case. To the extent that [husband] anticipated that his lawyer would represent him during the July 19, 2002 proceeding even if he was not present himself, his lawyer's sudden departure

-11-

> from the case placed [husband] in just the sort of quandary that
> Tenn. R. Civ. P. 60.02(1) is intended to remedy.

*Id.* Thus, the husband in ***Dotson*** was not on notice of his attorney's refusal to represent him at the hearing, and instead followed his attorney's advice until it became clear that the advice was erroneous, at which point it was too late for husband to appear.

Mother argues, however, that Father's reliance on ***Dotson*** is misplaced because Father was not reasonably relying on advice of counsel in failing to retain a new attorney and appear. Instead, Mother points out that Father was on notice that he should retain another attorney to represent him in this matter as early as June 21, 2011, when he received an email correspondence from his prior attorney, Attorney West, regarding retaining new counsel. Thus, Father knew he needed to retain a new attorney nearly five months prior to the hearing on the default judgment. The record shows that Attorney West again contacted Father, seeking to know the name of the newly retained attorney on August, 12, 2011. In this letter, Attorney West explained that another attorney needed to be listed with the trial court so that notices could be sent to Father's newly retained counsel. In addition, Attorney West advised Father to inform Mother's counsel of the change in attorneys. Nothing in the record indicates that Father followed this advice. Instead, more than a month later on September 27, 2011, Father replied that he would be meeting with another attorney in the next week. Indeed, Attorney Williams' affidavit states that she consulted with Father on October 5, 2011. However, Father's affidavit states that he did not retain Attorney Williams; therefore, she filed no notice with the trial court informing it of the change in counsel, nor did Attorney Williams contact Mother's counsel. Lacking knowledge that Attorney West could no longer represent Father in the case, the trial court proceeded to enter a default judgment against Father. In addition, the emails also show that Father did not request his file from Attorney West until November 2, 2011, nearly a month after consulting with Attorney Williams and more than four months after being advised to retain new counsel by Attorney West. Finally, despite informing Attorney West that he was consulting with an attorney and actually asking Attorney West to send his file to that attorney, Father did not actually retain any attorney to represent him in this case until at some point prior to filing his Rule 60.02 motion, several months after receiving notice from Attorney West that he could no longer represent Father. As previously discussed, it is Father's burden to show that he is entitled to Rule 60.02 relief. *See **Henry***, 104 S.W.3d at 482. In this case, the record shows that, unlike the husband in ***Dotson***, Father voluntarily and intentionally disregarded the advice of his prior counsel, who repeatedly advised Father to retain new counsel. *See **Dotson***, 2004 WL 73269, at \*3. In addition Father, unlike the husband in ***Dotson***, knew well in advance of Mother's Default Judgment Motion and the final hearing that Attorney West could no longer represent him. The situation is similar to that presented in ***Riggs***, where the defendants voluntarily chose to delay proceedings to obtain a new attorney. *See **Riggs***, 2011 WL 5090888, at \*5. Although,

here, Father had no choice but to retain a new attorney when Attorney West accepted a new position, it was Father's choice to delay the hiring of a new attorney for several months. In fact, even after consulting with an attorney, Father voluntarily chose not to retain her. Moreover, Father failed to inform either Mother's counsel, or the trial court, of the change until the Rule 60.02 motion was filed on March 12, 2012, approximately ten months after Father learned that Attorney West could no longer represent him.

Father places all the responsibility for the delays in this case on Attorney West, alleging that he failed to inform Father of the proceedings while he was his counsel of record and also failed to timely send Father's file to Attorney Williams. We do not disagree with Father that Attorney West's actions put him at a disadvantage, nor do we condone Attorney West's failure to abide by his ethical obligations to protect his client's legal interests. However, Attorney West's failure to live up to the professional obligations applicable to all attorneys does not excuse Father's own negligence in this case. The record shows that Father failed to promptly retain a new attorney, despite receiving repeated instruction to do so. At the time Father finally consulted an attorney, however, there was still significant time available in which Father could have prevented the entry of the default judgment. Instead of acting promptly to protect his interests, Father allowed several months to pass before retaining a new attorney and also failed to inform either the trial court or opposing counsel of his lack of representation until he filed his Rule 60.02 motion in March 2012. Had Father acted promptly in retaining a new attorney, seeking his file from Attorney West, or in informing the court or opposing counsel of his situation, the entry of the default judgment could have been avoided in this case.

The trial court made detailed factual findings that Father disregarded his prior attorney's repeated advice in delaying to retain a new attorney despite his knowledge that important litigation was pending regarding his children. Based on these facts, the trial court, who "[wa]s in the best position to assess the various factors that should be considered in determining whether [the] default judgment should be vacated," ***Rivergate Meadows***, 338 S.W.3d at 886 (citing ***Barbee***, 689 S.W.2d at 867), concluded that Father's inaction amounted to willfulness. While we agree with Father that his actions may not have amounted to a calculated decision to avoid his obligations, *see **McBride***, 2007 WL 2790681, at *3, we cannot conclude that the trial court abused its discretion in finding that Father's negligence in failing to appear was inexcusable. Because Father's failure to appear and defend Mother's Amended Petition was inexcusable, he is not entitled to Rule 60.02 relief. *See **Riggs***, 2011 WL 5090888, at *5 (holding that because the defendant failed to prove that their negligence was excusable, they "failed to carry their burden of proving entitlement to relief under Rule 60.02 of the Tennessee Rules of Civil Procedure.").

For the foregoing reasons, the judgment of the Robertson County Juvenile Court is affirmed and this cause is remanded for all further proceedings as may be necessary and are consistent with this opinion. Costs are taxed to Appellant Timothy K. Vinsant, and his surety.

_____

J. STEVEN STAFFORD, JUDGE

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE

# HOLLY D. BUTLER v. TIMOTHY K. VINSANT

**Juvenile Court for Robertson County**
**No. 1035022**

---

**No. M2012-01553-COA-R3-JV - Filed May 13, 2013**

---

## ORDER

The Majority Opinion and Partial Dissent filed in this case on April 15, 2013 are hereby withdrawn.

**PER CURIAM**