IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 7, 2024 Session

## CEDRIC CRUTCHER v. JOHNNY B. ELLIS, ET AL.

**Appeal from the Circuit Court for Davidson County**
No. 15C2901    Lynne T. Ingram, Judge
_____

### No. M2023-00283-COA-R3-CV
_____

This appeal concerns the denial of a motion to set aside default judgment and the award of damages in a premises liability action. After sustaining injuries from a shooting in a Nashville nightclub, Cedric Crutcher ("Plaintiff"), filed a premises liability action against various co-defendants, including the owner and operator of the nightclub, Paul Eichel ("Defendant"), and the owners of the building where the nightclub was located ("the Ellises"). The Ellises filed an answer to Plaintiff's complaint and a cross-claim against Defendant. When Defendant failed to respond to Plaintiff's complaint, Plaintiff filed a motion for default judgment, which the trial court granted. When Defendant failed to respond to the Ellises cross-claim, the Ellises also filed a motion for default judgment, which the court granted. Thereafter, the only remaining issues were the amount of damages that the Ellises and Plaintiff were entitled to recover from Defendant. Following a hearing on damages, the court awarded Plaintiff $300,000 against Defendant for his pain and suffering, and awarded the Ellises $31,745.76 against Defendant for the attorney's fees they incurred in defending the action as authorized under their lease agreement. Defendant filed a motion to set aside the default judgment pertaining to Plaintiff's premises liability claim, which the court denied. Defendant then filed a motion to alter or amend the judgment relating to Plaintiff's damages, which the court granted. Following a second evidentiary hearing on Plaintiff's damages, the court awarded Plaintiff a judgment against Defendant in the amount of $15,014.19 for medical expenses and $300,000 in noneconomic damages. Defendant appeals the trial court's denial of his motion to set aside default judgment in favor of Plaintiff, as well as the award of damages to Plaintiff. Finding no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

FRANK G. CLEMENT, JR., P.J., M.S., delivered the opinion of the court, in which, ANDY D. BENNETT, J., and J. STEVEN STAFFORD, P.J., W.S., joined.

- 1 -

Cody Galaher, Franklin, Tennessee, for the appellant, Paul Eichel.

William H. Stover, Nashville, Tennessee, for the appellee, Cedric Crutcher.

## OPINION

### FACTS AND PROCEDURAL HISTORY

On August 3, 2014, Plaintiff was shot three times at point-blank range in a Nashville nightclub (hereinafter "Club Fusion"). After the shooting, Plaintiff was taken to Vanderbilt University Medical Center ("VUMC") and treated for his injuries. Plaintiff later received additional medical treatment at Nashville General Hospital.

On July 31, 2015, Plaintiff filed a complaint against multiple co-defendants, including the owners of the building where Club Fusion was located—the Ellises—and the owner and operator of Club Fusion—Defendant—alleging premises liability negligence for failure to provide adequate security. Plaintiff amended his complaint to add a claim for vicarious liability in March 2016.

Defendant failed to respond to Plaintiff's original or amended complaint. Thus, upon Plaintiff's motion, the trial court entered an order granting a default judgment against Defendant on June 30, 2016.

The Ellises filed an answer to Plaintiff's amended complaint and a cross-claim against Defendant. In their cross-claim, the Ellises argued that they were entitled to payment of their attorney's fees by Defendant pursuant to the lease agreement with Defendant (hereinafter "the Lease Agreement").[1] They further argued that, if Plaintiff prevailed on his claims against them, they were entitled to indemnification from Defendant under the Lease Agreement.

Defendant failed to respond to the Ellises' cross-claim. Thus, the Ellises filed a motion for default judgment against Defendant, which the trial court granted in September 2021.

The Ellises then filed a motion for summary dismissal of Plaintiff's premises liability claims against them, which the trial court granted in an order entered November 2021. With regard to Plaintiff's premises liability negligence claim, the court found that it

---

[1] The Ellises and Defendant entered into a lease agreement in September 2010. The lease agreement contains the following indemnification clause: "Lessee [Paul Eichel] agrees to hold harmless and indemnify from and against any liability or loss, including counsel fees incurred in good faith by Lessor, arising out of any cause associated with Lessee's business or use of the premises."

was undisputed that Defendant was the party in control of Club Fusion under the Lease Agreement at the time of the shooting. Thus, the court found that Plaintiff "cannot prove essential elements of his claim that the [Ellises] were negligent in failing to provide security because Mr. Crutcher cannot prove that the [Ellises] were in control of the premises." With regard to Plaintiff's vicarious liability claim, the court found that the Ellises could not be held vicariously liable for Plaintiff's injuries because Plaintiff "presented no evidence that [Defendant] and/or Club Fusion were agents of the [Ellises][,]" and, thus, it was undisputed that the Ellises had "no control over the employees of Club Fusion[.]"

Accordingly, the only issues remaining before the court were the amount of damages Plaintiff was entitled to recover from Defendant for his injuries and the amount of attorney's fees the Ellises were entitled to recover from Defendant pursuant to the Lease Agreement.

On February 4, 2022, Defendant made his first appearance in this case by appearing at the hearing on Plaintiff's motion to set a date for the damages hearing. The court set the hearing for August 2, 2022. Then, Defendant waited until August 1, 2022, the day before the damages hearing, to file a motion for continuance of that hearing, which the court denied.

On August 2, 2022, the trial court held a hearing to determine Plaintiff's damages and the amount of attorney's fees the Ellises were entitled to recover. Although he was aware of the scheduled hearing, Defendant did not participate in the August 2, 2022 damages hearing.

In an order entered August 12, 2022, the trial court awarded Plaintiff a judgment against Defendant in the amount of $300,000 for his pain and suffering. The court awarded the Ellises a judgment against Defendant in the amount of $29,590 in attorney's fees, along with $2,185.76 "in expenses as indemnification pursuant to the lease," for a total judgment of $31,745.76.[2]

On August 5, 2022, seven years after the commencement of this action and six years after the entry of the default judgment, Defendant filed a motion to set aside the default judgment entered June 30, 2016. Then, in September 2022, Defendant filed a motion to alter or amend the amount of the judgment awarded to Plaintiff in the August 12, 2022 order, arguing that he "had no legal obligation, duty, or contractual responsibility for Plaintiff's safety when the shooting occurred" given that he was "neither the owner nor manager of Club Fusion at the time" and that the order should be "set aside or otherwise altered or amended to reflect the true ownership and liability for Plaintiff's purported

---

[2] The court later granted the Ellises' motion for a separate order, finding that "the consolidation of the two orders of judgment in the August 12, 2022 order prevents [the Ellises] from being able to record their judgment without also recording the judgment in favor of [Plaintiff]."

damages." Defendant further argued that the trial court erred in awarding Plaintiff $300,000 in damages without any supporting evidence or explanation of how that amount was quantified.

The court heard Defendant's motions on November 4, 2022. The court denied the motion to set aside the default judgment; however, the court granted the motion to alter or amend the amount of the judgment awarded to Plaintiff and set the matter for hearing.

On January 18, 2023, the court held an evidentiary hearing to determine Plaintiff's damages. On January 25, 2023, the trial court issued its final order awarding Plaintiff $15,014.19 in medical expenses and $300,000 in noneconomic damages against Defendant.

This appeal by Defendant followed.

### ISSUES

Defendant presents three issues for our review. Plaintiff presents no additional issues and the Ellises are not parties to this appeal. We rephrase Defendant's issues as follows:

1. Whether the trial court erred in denying Defendant's motion to set aside the default judgment entered June 30, 2016.

2. Whether the trial court erred in awarding Plaintiff $300,000 in noneconomic damages against Defendant.[3]

3. Whether Defendant is entitled to his costs and reasonable attorney's fees on appeal.

---

[3] In his appellate brief, Defendant's second issue is stated as follows: "2. The trial court erred in awarding damages to Plaintiff/Appellee, CEDRIC CRUTCHER against the Defendant/Appellant, PAUL EICHEL." However, the argument section of Defendant's brief associated with this issue focuses solely on the trial court's award to Plaintiff of $300,000 in noneconomic damages and makes no argument regarding the $15,014.19 award for medical expenses. Consequently, our analysis of this issue will focus only on the trial court's decision to award Plaintiff $300,000 in noneconomic damage. See *Highlands Physicians, Inc. v. Wellmont Health Sys.*, 625 S.W.3d 262, 304 (Tenn. Ct. App. 2020) ("The failure of a party to cite to any authority or to construct an argument regarding his position on appeal constitutes waiver of that issue.") (citation omitted).

## STANDARD OF REVIEW

The decision to grant or deny a motion to set aside default judgment is within the sound discretion of the trial court. *DeLong v. Vanderbilt Univ.*, 186 S.W.3d 506, 511 (Tenn. Ct. App. 2005) (citations omitted). We review the trial court's ruling denying a Tennessee Rule of Civil Procedure 60.02 motion to set aside a default judgment under an abuse of discretion standard. *Tenn. Farmers Mut. Ins. Co. v. DeBruce*, 586 S.W.3d 901, 905 (Tenn. 2019) (citations omitted).

> A trial court abuses its discretion when it causes an injustice by applying an incorrect legal standard, reaching an illogical decision, or by resolving the case 'on a clearly erroneous assessment of the evidence.'" *Henderson*, 318 S.W.3d at 335 (quoting *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010)). We presume that the trial court's discretionary decision is correct, and we review the evidence in the light most favorable to the trial court's decision. *Id.* (quoting *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 709 (Tenn. Ct. App. 1999) and citing *Keisling v. Keisling*, 196 S.W.3d 703, 726 (Tenn. Ct. App. 2005)).

*Id.*

This case was tried without a jury. As such, "[o]ur review is de novo upon the record of the proceedings below with a presumption of correctness as to the trial court's factual findings unless the evidence preponderates against those findings." *Barnes v. Barnes*, 193 S.W.3d 495, 498 (Tenn. 2006) (citing Tenn. R. App. P. 13(d)). However, the trial court's conclusions of law are reviewed de novo and "are accorded no presumption of correctness." *Brunswick Acceptance Co., LLC v. MEJ, LLC*, 292 S.W.3d 638, 642 (Tenn. 2008).

## ANALYSIS

### I.    MOTION TO SET ASIDE DEFAULT JUDGMENT

Defendant contends that the trial court erred in denying his motion to set aside the default judgment entered June 30, 2016 because he was "physically and financially prevented from participating in this case as a result of . . . his heart attack and recovery from open-heart surgery during the pendency of this case at the trial level." He also claims that he was not the owner or operator of Club Fusion at the time of the shooting, and, consequently, that he did not owe Plaintiff "any duty at all", nor could "any vicarious liability" attach. He further submits that "setting aside the judgment would merely result in nominal expenses and additional effort by the Plaintiff in having his claims defended by [Defendant]."

However, as Plaintiff correctly notes, Defendant's motion to set aside the default judgment did not show "any evidence that he had open heart surgery during the pendency of the case before the trial court such that he was prevented from filing a motion to alter or amend the order of default within a year from the date of entry" and that Defendant "had all of the information regarding what he should do to prevent a default judgment" and did "nothing [for almost six years] until he was notified that the court was setting a damage[s] hearing." Plaintiff also argues that "the record supports the fact that [Defendant] was the owner and lessee of the premises where the incident occurred", and that Plaintiff would be "severely prejudiced" if the default judgment were set aside because "he has litigated this case for more than six years" and because the individual who Defendant claims was the owner of Club Fusion at the time of the shooting is now deceased.

Under Rule 55.02 of the Tennessee Rules of Civil Procedure, a default judgment may be set aside in accordance with Tennessee Rule of Civil Procedure Rule 60.02 for "good cause shown." Rule 60.02 provides, in pertinent part, that a party may be relieved from a judgment in the event of "mistake, inadvertence, surprise or excusable neglect." *Watkins v. Watkins*, No. M2002-01777-COA-R3-CV, 2003 WL 23093846, at *2–3 (Tenn. Ct. App. Dec. 30, 2003). When a party seeks relief under Rule 60.02, "the burden is on the movant to set forth, in a motion or petition and supporting affidavits, facts explaining why the movant was justified in failing to avoid the mistake, inadvertence, surprise or neglect." *Tennessee Dep't of Hum. Servs. v. Barbee*, 689 S.W.2d 863, 866 (Tenn. 1985) (citation omitted).

A court must consider three factors when determining if a default judgment should be vacated due to mistake, inadvertence, excusable neglect, or fraud: (1) whether the default was willful; (2) whether the defendant has a meritorious defense; and (3) whether the non-defaulting party would be prejudiced if relief were granted. *Pryor v. Rivergate Meadows Apartment Assocs. Ltd. P'ship*, 338 S.W.3d 882, 886 (Tenn. Ct. App. 2009) (citations omitted).

While Defendant's motion to set aside the default judgment does not specify which provision of Rule 60.02 that he is relying upon, it is clear from his arguments that he is seeking relief due to "excusable neglect." When a party seeks relief from a default judgment due to "excusable neglect," a reviewing court must first determine whether the conduct precipitating the default was willful. *Discover Bank v. Morgan*, 363 S.W.3d 479, 494 (Tenn. 2012). Tennessee courts have found that willfulness includes "conduct that is flagrant and unexplained." *Hayes v. Hayes*, No. M2006-02356-COA-R3-CV, 2007 WL 2580026, at *2 (Tenn. Ct. App. Sept. 6, 2007) (citing *Munday v. Brown*, 617 S.W.2d 897 (Tenn. Ct. App. 1981)). "If the court finds that the defaulting party has acted willfully, the judgment cannot be set aside on "excusable neglect" grounds, and the court need not consider the other factors." *Discover Bank*, 363 S.W.3d at 494.

In *McBride v. Webb*, No. M2006-01631-COA-R3-CV, 2007 WL 2790681, (Tenn. Ct. App. Sept. 25, 2007), this court found that a defendant's failure to respond was willful when she received the summons and complaint, read the summons, and did nothing to respond to the complaint as directed by the summons. *Id.* at *3. Here, Defendant does not dispute that he was properly served with the summons and complaint on March 23, 2016. He was also served with the motion for default judgment at the address where he was served the summons as evidenced by the certificate of service. Despite this, Defendant did nothing to respond to Plaintiff's complaint and did not appear at the default judgment hearing on June 24, 2016. Moreover, as mentioned previously, Defendant waited to make an appearance in this case until the motion to set damages hearing on February 4, 2022, and further waited until August 5, 2022 to file his first motion in this case. Moreover, he never filed an answer or responsive pleading to Plaintiff's complaints or the Ellises' crossclaim.

Except for conclusory statements regarding his health, Defendant has failed to provide a proper explanation for why he failed to file a motion in this case until seven years after the commencement of this action and six years after the entry of default judgment. In his motion to set aside default judgment, as on appeal, Defendant argued that his inaction in this cause was not willful because, at the time of the final dispositive hearing, he was in Florida "recovering from cancer" and "needed to recover from open-heart surgery that resulted from [a] heart attack." However, Defendant's motion was not supported by affidavits or medical proof identifying when these medical emergencies occurred, how long they lasted, or how they prevented him from filing a responsive pleading in this case for seven years.

We therefore conclude that Defendant's failure to file an answer or responsive pleading to the complaint or response to the motion for default judgment was both "flagrant and unexplained"; thus, it was willful. *See Hayes v. Hayes*, 2007 WL 2580026, at *2. Because we have determined that Defendant's failure to appear in this case was willful, we need not consider whether he has set out a meritorious defense or whether Plaintiff would be prejudiced by the granting of relief. *See Discover Bank*, 363 S.W.3d at 493.

Accordingly, the trial court did not abuse its discretion in denying Defendant's motion to set aside the default judgment entered June 30, 2016.

## II.   DAMAGES

Defendant next claims that the trial court erred in awarding damages to Plaintiff because "in the [January 25, 2023] Final Order Awarding Damages, the trial court summarily awards Crutcher '$300,000 in noneconomic damages' in a (2) page order absent of any findings of facts or conclusions of law as to how it calculated, quantified, or otherwise arrived at the amount awarded to [Plaintiff]." Defendant therefore argues that the trial court failed to make appropriate findings of fact pursuant to Tennessee Rule of Civil Procedure 52.01, and that this court should "immediately vacate the $300,000 award

- 7 -

and remand for the trial court to enter an order that complies with Tennessee Rule of Civil Procedure 52.01."

Plaintiff counters that "there is no just reason for the Court to vacate the Final Order of the Court based upon Rule 52.01 of the Tenn. Rule of Civil Procedure" because the trial court presented its "basis for the award of damages in detail" in the final statement of the evidence filed July 27, 2023.

Tennessee Rule of Civil Procedure 52.01 provides, in pertinent part, as follows:

> In all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment. . . . If an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact and conclusions of law appear therein[.]

*Lovlace v. Copley*, 418 S.W.3d 1, 34 (Tenn. 2013) (citing Tenn. R. Civ. P. 52.01)).

The purpose of Rule 52.01 is to facilitate appellate review by "affording a reviewing court a clear understanding of the basis of a trial court's decision." *Gooding v. Gooding*, 477 S.W.3d 774, 782 (Tenn. Ct. App. 2015) (citing *In re Estate of Oakley*, No. M2014-00341-COA-R3-CV, 2015 WL 572747, at *10 (Tenn. Ct. App. Feb. 10, 2015)) (quoting *Lovlace v. Copley*, 418 S.W.3d 1, 35 (Tenn. 2013)). Generally, a trial court's findings of fact must "include as much of the subsidiary facts as is necessary to disclose to the reviewing court the steps by which the trial court reached its ultimate conclusion on each factual issue." *Id.* at *10–11 (citations omitted). Otherwise, appellate courts are "left to wonder" about the basis for the trial court's decision. *In re Houston D.*, 660 S.W.3d 704, 721 (Tenn. Ct. App. 2022).

As stated previously, after the second evidentiary hearing to determine damages during which Defendant was present and allowed to participate, the trial court found that Plaintiff was entitled to a noneconomic damages award of $300,000. However, both the final order entered January 25, 2023 and the later filed statement of the evidence fail to include specific findings of fact regarding how the trial court arrived at this award. When a trial court fails to explain the factual basis for its decisions, we may either "conduct a de novo review of the record to determine where the preponderance of the evidence lies" or "remand the case with instructions to make the requisite findings of fact and conclusions of law and enter judgment accordingly." *Gooding v. Gooding*, 477 S.W.3d 774, 783 (Tenn. Ct. App. 2015) (citations omitted). In this case, we find it appropriate to marshal on because the record is sufficient for us to make our own determination regarding where the preponderance of the evidence lies.

The final statement of the evidence outlines Plaintiff's undisputed testimony from the second damages hearing on January 18, 2023. Specifically, Plaintiff testified that, on August 3, 2014, he was shot a total of three times in the knee, chest, and groin while in the VIP section of Club Fusion. Immediately following the incident, Plaintiff was transported to VUMC, where he underwent surgery to remove a bullet fragment. Plaintiff testified that, for months thereafter, he "could not drive or swim and had to use a walker when walking."[4] He also underwent "physical therapy on and off for two years" for the injury to his knee.

Due to his injuries sustained from the shooting, Plaintiff testified that he was "unable to work from August 2014 until approximately August 2015", and although he "went back to work full-time in the later part of the year 2015 or in early 2016" he could "no longer do private security work." Plaintiff testified that, before the shooting, he was "physically fit" and "in good shape", and that he had "no problems running, walking, or lifting", but that, now, he is unable to "run or lift things like he had been able to in the past", "continues to wear a knee brace due to his injuries", and continues to experience various medical complications that were not present prior to the incident, including "difficulty voiding and using the restroom" and "swelling and pain."

Based upon the above, we find that the evidence preponderates in favor of the trial court's award to Plaintiff of $300,000 in noneconomic damages against Defendant.

Accordingly, we affirm the award of $15,014.19 in medical expenses[5] and $300,000 in noneconomic damages against Defendant.

### III.    ATTORNEY'S FEES

Defendant maintains that he is entitled to his attorney's fees and costs associated with this appeal under Tennessee Rule of Appellate Procedure 40(a) if he prevails on some, if not all, of his arguments.

Tennessee follows the "American Rule" with regard to attorney's fees, which provides as follows:

---

[4] Plaintiff testified that, after he was discharged from VUMC, he "was on a walker for 'about three months' and 'his groin did not work for about four months.'"

[5] As noted earlier, the argument section of Defendant's brief focuses solely on the award of $300,000 in noneconomic damages. Consequently, Plaintiff has waived his right to contest the award of $15,014.19 award for medical expenses. *See Highlands Physicians, Inc. v. Wellmont Health Sys.*, 625 S.W.3d 262, 304 (Tenn. Ct. App. 2020) ("The failure of a party to cite to any authority or to construct an argument regarding his position on appeal constitutes waiver of that issue.") (citation omitted).

A party in a civil action may recover attorney's fees only if: (1) a contractual or statutory provision creates a right to recover attorney's fees; or (2) some other recognized exception to the American Rule applies, allowing for recovery of such fees in a particular case." Otherwise, litigants are responsible for their own attorney's fees.

*Eberbach v. Eberbach*, 535 S.W.3d 467, 474 (Tenn. 2017) (in text citations omitted).

We have concluded that Defendant has not prevailed on any of his arguments on appeal. Even if he had, we would have no basis upon which to award his appellate attorney's fees given that he has presented no contractual or statutory provision entitling him to an award of such fees. Accordingly, we decline to award Defendant his attorney's fees on appeal.

## CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded to the trial court for further proceedings consistent with this opinion. Costs of appeal are assessed against the appellant, Paul Eichel.

_____
FRANK G. CLEMENT JR., P.J., M.S.